COSMO FARQUHAR, Respondent, v. AMERICAN CODE COMPANY, INC., Appellant.

First Department, June 2, 1922.

Master and servant — action for wrongful discharge and commissions — evidence warranted verdict for plaintiff — award of general damages based on sufficient evidence — defendant not entitled to affirmative upon trial, there being no fixed compensation for plaintiff — if plaintiff failed to perform his duties, defendant had right to discharge without assigning reason.

In an action to recover for a wrongful discharge from employment and for commissions earned, where the defense is that the plaintiff was discharged for cause, in that he failed to devote his entire time during business hours to the business of the defendant as he had agreed, a judgment in favor of the plaintiff is warranted, where it appears that the contract provided for employment from January 3, 1919, to February 1, 1937; that the plaintiff was discharged May 1, 1919; that the plaintiff was concededly competent; that the defendant made no complaint prior to the plaintiff's discharge that the plaintiff was not properly performing his duties, although it had full knowledge with respect to what the plaintiff was doing; that there was evidence that warranted the inference that, shortly after the contract was made, the defendant commenced to look for justification for discharging the plaintiff; that it cannot as a matter of law be held that the plaintiff was not properly devoting his time to the interests of the defendant, and that the evidence justified the jury in finding that the time spent by the plaintiff outside the defendant's office, including that spent at the office of a corporation, known as the Allied Code Company, was spent in the performance of his duties with the knowledge and acquiescence of the defendant.

An award of $20,000 general damages was properly made on evidence showing that the plaintiff's commissions until the time of his discharge were $324.01 for January, $586.73 for February, $770.20 for March and $1,019.19 for April, and that, if he had not been discharged, he would have been entitled to $982.05 for May, $1,255.71 for June and $1,321.44 for July, though no further evidence with respect to the business of the defendant was given, although the trial was not had until January 9, 1922, and on evidence that the plaintiff as president of the Allied Code Company received $5,000 a year and that the ban on the use of codes was not raised by the government until the middle of 1919 and, therefore, there had been no great demand for them until after the plaintiff was discharged.   The failure of the defendant to show that its business fell off during the intervening two and one-half years before the trial, together with the evidence concerning the government ban, warranted the jury in finding that the defendant's business had continued and would continue to prosper.

The defendant was not entitled to the affirmative upon the trial as there was no fixed compensation for the plaintiff and had he rested without proof, there would have been no basis for the determination of the jury as to the amount to which he was entitled.

*It seems,* that, if the plaintiff failed to perform his duties and to obey reasonable orders, the defendant was at liberty to discharge him without assigning a reason.

PAGE, J., dissents.

APPEAL by the defendant, American Code Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of January, 1922, upon the verdict of a jury.

*George H. Gilman* of counsel, for the appellant.

*Newman & Butler* [*Eugene Newman* of counsel], for the respondent.

LAUGHLIN, J.:

This is an action predicated on a contract in writing made between the parties on the 3d of January, 1919, by which defendant agreed to employ plaintiff as its sole sales manager from that day until the 1st of February, 1937, and it is brought to recover, on two counts, commissions earned under the contract and damages for the wrongful discharge of the plaintiff.  The first count of the complaint shows that prior to the 14th of April, 1914, plaintiff and Cyrus F. Tibbals, Sr., were copartners publishing and selling codes; that on that day they incorporated the defendant under the laws of New York with a capital of 1,000 shares of the par value of $100 each, and Tibbals became president and took 600 shares and $60,000 of a bond issue of $100,000, and plaintiff became vice-president and took 300 shares of the stock and the remaining $40,000 of the bonds; that defendant brought an action against plaintiff, which was settled and discontinued pursuant to said agreement under which the plaintiff was employed, and a former agreement for his

First Department, June, 1922. [Vol. 201

employment, made on the 1st of February, 1917, was thereby canceled; that his compensation under the agreement was to consist only of specified percentages of defendant's gross receipts from its own publications and business, and of its gross profits on sales of other publications; that defendant agreed to render an account of each month's business on the fifteenth of the following month, and then to pay the amount to which plaintiff was entitled for the preceding month; that the defendant agreed to furnish plaintiff with an office and to pay specified expenses, including his traveling expenses, to the extent specified and to such further extent as might be agreed upon, and reserved the right to refuse his orders and to fix terms of credit and to have the first right to purchase any code compiled by the plaintiff, and agreed to make specified monthly payments on the balance of its bonds held by plaintiff, and to pay, as therein provided, unpaid salary owing to the plaintiff under the former contract; that he entered upon the performance of his duties and fully performed them until May 1, 1919, when, without cause, he was discharged and prevented from further performance under the contract, although he stood ready, willing and able, and offered so to do; that the defendant failed to render an account of its business for the month of April, 1919, and to pay the amount due plaintiff therefor, which, in the first count, he alleges was about $1,000, although due demand has been made for such payment. The second cause of action is on the same facts but for $100,000 damages for the discharge. The demand for judgment is for the items of both counts. The answer to the first cause of action denies the allegations with respect to the wrongful discharge, due performance, readiness, willingness and offer to perform, and alleges that defendant discharged plaintiff on the 30th of April, 1919, which is the day before the one assigned by him, for cause, in that he was guilty of a breach of the contract in failing to devote his entire time during the regular business hours to the business of the company as provided in the agreement, and devoted a large part of his time to the interests of the Allied Code Company, a rival corporation, in violation of a special agreement — not set forth in the written agreement — by which he agreed, in effect, to sever all connection with and not to assist the rival. The answer to the second cause of action is the same; and a partial defense is alleged, to the effect that on the 1st of June, 1919, the plaintiff became and ever since has been president of the Allied Code Company at a large salary.

At the opening of the trial, counsel for the defendant demanded that it be given the affirmative. The motion was denied and it excepted; and that is assigned as error, on which a reversal is asked

on the authority of *Herreshoff* v. *American & British Mfg. Co.* (164 App. Div. 238). That decision, however, is not in point. It was there held that it was reversible error to deny the request of a defendant for the affirmative in an action for damages for a wrongful discharge of an employee, where the contract and discharge were admitted and the contract provided for a fixed compensation, for in such case the burden was on the defendant to justify the discharge, and presumptively the damages were the unpaid fixed compensation for the contract period, and the defendant had the burden of showing that the plaintiff obtained or might have obtained other employment of a similar nature in reduction of the damages. In this case, however, there is no fixed compensation, and if the plaintiff had rested without proof, the pleadings would have afforded no basis for the determination by the jury of the amount to which the plaintiff was entitled down to the time of his discharge, or the commissions he probably would have earned if he had been permitted to perform the contract; and, therefore, the defendant was not entitled to the affirmative.

Defendant pleaded that the plaintiff was incompetent, but on the trial its counsel admitted that he was a competent sales manager and an expert in making codes. He testified that it was not his duty under the contract to act as salesman, but that it was his duty to, and he did, call on the trade with a view to establishing agencies to sell codes published and handled by the defendant, and to obtaining orders for private codes to be compiled by him; that he advised the president of the company that it would be well to make the Allied Code Company, with which his son was associated, its retail selling agent, and in that connection stated that, with a little training by him, it should be able to handle the defendant's publications to their mutual advantage; and that the Allied Code Company contemplated the publication of the fifth edition of the A. B. C. Code, which was sold by the defendant and was one of its best sellers; and that if an arrangement could be effected with the Allied Company, the publication by it of that code could be stopped; that the defendant's president finally authorized him to make a contract with the Allied Code Company, by which it was to receive and devote its time to selling the defendant's codes at a discount of forty per cent, and not to publish any code in competition with defendant; that, pursuant to that agreement, business relations were established with the Allied Code Company, and it sold codes for the defendant throughout the year 1919; and that the monthly bills for these sales ran from $685.10 in January to $1,090.50 in May, and $202.50 for each of the months of November and December. Plaintiff further testified that it was his duty as sales manager

to call on firms doing business with the defendant with a view to increasing business, and to train them in the use of the various codes, with respect to which he was an expert; and he gave as an illustration of his duties, his experience with one company which bought a dozen copies of a code published by the defendant, but had never used the code before, and they were sold by the defendant on the understanding that he would devote the necessary time at the purchaser's place of business to lecturing their staff of salesmen on the use of the code, and that he did that several times; and he testified that there were many similar instances in the few months he was in the employ of the defendant, and that it was his duty to effect as many sales as possible for the account of the defendant. He testified that the first complaint made to him by the defendant was an inquiry about the fifteenth of April by its president with respect to why he did not call at the office more often, and he explained that by stating, in effect, that there was no business to be done at the office; and that no further complaint was made until the morning of May first, when he asked the president about what his commissions would be for the month of April and was informed that it would make no difference to him for the reason that the defendant would not pay him any more commissions and would not pay any further installments or interest on his bonds.

It is contended in behalf of the defendant that the complaint should have been dismissed, and that, in any event, the verdict was against the weight of the evidence. Plaintiff admitted that after he made the contract in behalf of the defendant with the Allied Code Company, he spent most of his time in the office of that company; and he did not in that connection or elsewhere in his testimony expressly state what he was doing there; and he also somewhat flippantly admitted that he spent considerable time around the streets. But defendant's president admitted that he made no complaint prior to the plaintiff's discharge that plaintiff was not properly performing his duties although he had full knowledge with respect to what plaintiff was doing, for during the latter part of April he employed detectives to follow plaintiff about and report to him with respect to plaintiff's movements, and they testified that most of plaintiff's time was spent in the office of the Allied Code Company. It further appears that, during the period of the plaintiff's employment and while he was ill, without notice to him, he was removed as vice-president, and the son of the president was elected in his place and given an increased salary and took plaintiff's place as sales manager after the discharge. Counsel for the respondent argues that the appellant did not make this contract with the plaintiff in good faith but for the purpose of becoming

released from its liability under the former contract with him. That was not an issue in the case; but the evidence on which that claim is made fairly warrants the inference that, shortly after making this contract, the defendant commenced to look for justification for discharging the plaintiff, because commencing early in February, its president directed its stenographer to keep minutes of the time the plaintiff spent in the office of the company, and after each call there by the plaintiff he dictated to her the length of the call, and later, as already observed, he had plaintiff under the surveillance of private detectives; and he conceded that he never, until the time of his discharge, made any complaint to the plaintiff with respect to the manner in which he was performing his duties. Of course, if the plaintiff failed to perform his duties or to obey reasonable orders, the defendant was at liberty to discharge him (*Corrigan* v. *E. M. P. Producing Corp.*, 179 App. Div. 810), and the defendant's failure to assign a sufficient reason for the discharge of the plaintiff is immaterial, provided cause therefor existed (*Getty* v. *Williams Silver Co.*, 221 N. Y. 34; 190 App. Div. 672; 162 id. 513); but it cannot be held as matter of law that the plaintiff failed to perform his contract with respect to devoting his time during the regular business hours to the business of the defendant, and, in the circumstances, I think the jury were warranted in finding that his absence from the office was in the performance of his duties as they were understood by him and as was acquiesced in by the defendant. It is a reasonable inference that he meant that the time spent in the office of the Allied Code Company was in instructing its employees concerning defendant's codes, and that he meant by the reference to time spent running around the street that it was spent in calling on the trade in the performance of his duties as sales manager.

It was conceded that his commissions for April were $1,019.19. The verdict was for $21,019.19, which shows that the jury awarded $20,000 as general damages. The only basis shown for the general damages was the amount of the plaintiff's commissions under the contract until the time of his discharge, which were $324.01 for January, $586.73 for February, $770.20 for March, and $1,019.19 for April, thus showing a gradual increase; and the commissions on the same basis, to which, if he had not been discharged, he would have been entitled for the succeeding three months, would have been for May $982.05, for June $1,255.71, and for July $1,321.44. The issues were brought to trial on the 9th of January, 1922, but no further evidence with respect to the business transacted by the defendant in the meantime — a period of about two and one-half years — was shown. This evidence and further evidence that the

plaintiff, as president of the Allied Code Company, was receiving $5,000 a year, afforded a basis upon which the jury could determine the general damages sustained by him. (*Wooldridge* v. *Shea*, 186 App. Div. 705; *Davis* v. *Dodge*, 126 id. 469; *Macauley* v. *Press Publishing Co.*, 170 id. 640; affd., 222 N. Y. 696.) The failure of the defendant to show that its business fell off during the intervening two and one-half years before the trial warranted the jury in inferring that its business continued to prosper; and in view of evidence to the effect that the ban on the use of codes was not raised by the government until the middle of 1919 and, therefore, there had not been a very great demand for them until after plaintiff was discharged, the jury were warranted in finding that defendant's business would have continued to be profitable. In fact it is not claimed that the verdict is excessive, if the plaintiff is entitled to recover.

I am of opinion, therefore, that the recovery was warranted by the evidence, and that the judgment should be affirmed, with costs.

CLARKE, P. J., DOWLING and MERRELL, JJ., concur; PAGE, J., dissents.

Judgment affirmed, with costs.