Albert M. Abady, Appellant, v Interco Incorporated et al., Respondents.

First Department, July 17, 1980

## APPEARANCES OF COUNSEL

*Milton S. Teicher* for appellant.

*Greg A. Danilow* of counsel *(Kramer, Levin, Nessen, Kamin & Soll,* attorneys), for respondents.

## OPINION OF THE COURT

LUPIANO, J.

Unrebutted evidence in the record demonstrates that plaintiff was employed by defendants Village Industries, Inc., and Goodline Sportswear, Inc., in 1972, under an oral employment contract of indefinite duration (i.e., the term of employment was indefinite, the contract apparently being terminable at will). There is also unrebutted testimony that Goodline Sportswear, Inc., was liquidated sometime in 1975. The individual defendants, Sidney Gould and Theodore Fell, are the stockholders and controlling parties of the corporate defendants apart from defendant Interco Incorporated. Gould and Fell entered into an agreement whereby they contracted to sell their stock in their companies to defendant Interco Incorporated. In January, 1975, plaintiff was informed of this development by the individual defendants who assured him that he would be retained by them as a key employee as long as they were "running" the company and that most likely, plaintiff would obtain a contract from Interco. Subsequently, the Interco "deal" was consummated by the individual defendants whereby they conveyed their interest in their close corporations to defendant Interco Incorporated. In March, 1975, plaintiff was informed of this fact by the individual defendants. Interco having obtained viable businesses was concerned that such businesses retain their positive aspect, i.e., to continue as successful enterprises.

Defendants Gould and Fell, having apparently entered into

three-year employment agreements with their companies, retained operational control (at least to some degree). Pursuant to their 1975 agreement with Interco Incorporated, the purchaser, the individual defendants were entitled to receive an amount, not in excess of $1,000,000, from Interco if and to the extent the average earnings of the corporations purchased by Interco for the three-year period ending February 28, 1978 (the Earnings Period) exceed $1,300,000. Accordingly, it is clear that the individual defendants were financially interested in the continued success of the business entities which they had conveyed to Interco. Plaintiff testified that Gould and Fell entered into an oral employment contract with him at this conference in March, 1975, whereby they employed him on behalf of the corporate defendants for whom he was then working pursuant to the oral 1972 at-will employment agreement in the same key capacity as head of the manufacturing facilities for a period of three years. According to plaintiff: "(t)hey said they wanted to retain the key people; they wanted me to guarantee I would stay with them for three years, in turn they would guarantee that I would have a job at the same level for the three year period * * * They wanted me to do the best I can to see they made the * * * million dollars * * * [A]s an incentive they said I would share in the profits * * * I was to get a participation * * * Well, I asked them * * * Do I get the same salary, would you guarantee the bonus, which was a $5,000 a year bonus; I had an expense account, I had a car and I had Major Medical. I said is everything going to remain the same? Yes; I was assured of that. I said fine, I'll—I am happy to stay, it's a good job * * * One more thing; in the eventuality if for any reason they should leave Interco prior to the three years, then the contract would be off * * * it would be up to Interco at that time."

    ■ Plaintiff and the individual defendants entered into an agreement dated as of March 25, 1975, which in its recital clauses acknowledges the agreement dated as of November 27, 1974, as amended on March 3, 1975 between said defendants and Interco, whereby the latter purchased the corporations owned by the individual defendants, acknowledges the agreement between Interco and the individual defendants whereby the latter may each obtain further moneys not to exceed $1,000,000 from Interco during the three-year earning period as above indicated, and, most important, acknowledges that

plaintiff is an employee of, *inter alia,* Village Industries, Inc., and agrees to continue as such employee for the earning period which is three years. This agreement, signed by the individual defendants and plaintiff, clearly satisfies the Statute of Frauds, assuming plaintiff's oral contract of employment entered into in March, 1975, is viewed as within the ambit of such statute. Section 5-701 of the General Obligations Law provides: "a. Every agreement * * * is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement * * * 1. By its terms is not to be performed within one year from the making thereof". The agreement between defendants Gould and Fell and plaintiff patently constitutes a memorandum in writing signed by the lawful agents (Gould and Fell) of the corporate employers Village Industries, Inc. and Goodline Sportswear, Inc., assuming the oral contract of employment entered into in March, 1975 is for a definite three-year term, and by its terms, cannot be capable of performance within one year from the making thereof.

In this aspect, the partial dissent of Justice Bloom misperceives the thrust of the instant analysis. It is well recognized that "employment contracts * * * sometimes expressly provide that one of the parties shall have the power of termination. Although this is not usually called an option contract, it is one in fact. The party given the power has the option between termination and performance, and his exercise of the power changes the legal relations of the parties just as in other cases. The consideration for this option to terminate is the consideration that the holder of the option gives for the primary promises of the option giver; and, as in other cases, the option is irrevocable" (1 Corbin, Contracts, § 265 [1950 publication]). The mere fact that the service contract is terminable at the will of one of the parties does not negate an agreement as to a fixed term. Pursuant to the acknowledgement in the written profit-sharing agreement as to the existence and terms of the oral contract of employment, it is manifest that the employment agreement was terminable at will on the plaintiff employee's part and for a fixed term of three years on the employer defendant's part. "Similarly to the situation that exists where there is an oral contract of employment terminable at the will of either party, some of the cases hold that such a contract *terminable by one,* but *not*

*by both,* of the parties, *in which no definite term* longer than a year is agreed upon, is not within the provision of the statute of frauds relating to contracts which are not to be performed within a year. At least, this appears to be the rule where the defendant alone had the right to terminate the contract. *If the right to terminate* the agreement *is limited to the plaintiff alone,* while the *defendant's liability endures* indefinitely [such as the instant employment agreement which contemplated that the employer defendants would employ plaintiff for a definite three-year term], it has been held that the agreement is within the statute, because it is illusory, from the point of view of the defendant, to consider the contract terminable or performable within one year; but there is some authority to the contrary" (56 NY Jur, Statute of Frauds, § 39, pp 79-80; emphasis supplied). The critical *interrelation* between the oral employment contract and the written profit-sharing agreement is patent. Indeed, to reiterate, the profit-sharing agreement specifically states that it is entered into by the defendants Gould and Fell to induce plaintiff to remain as employee for the "Earnings Period" which is indisputably for a three-year period. With respect to the partial dissenting opinion of Justice CARRO, the written profit-sharing agreement *does not fail* as a memorandum sufficient to satisfy the Statute of Frauds. The profit-sharing agreement meets the test set forth in *Kobre v Instrument Systems Corp.* (54 AD2d 625, 626). It unequivocally does more than merely indicate the existence of a contractual relationship or the possibility of such a relationship.

The rationale of the partial dissenting opinion of Justice CARRO does not take cognizance of the reasoned pragmatic approach to the Statute of Frauds so ably delineated by that pre-eminent legal scholar, Judge CARDOZO, in *Marks v Cowdin* (226 NY 138). An overly restrictive and supertechnical approach is adopted in the partial dissenting opinion, an approach which in its indiscriminate embrace might well occasion the utilization of the shield of the statute as a weapon with which to perpetrate fraud.

As so aptly observed by Judge CARDOZO: "The chief question in the case grows out of the Statute of Frauds. The contract of employment was not to be performed within a year. There is need, therefore, of a note or memorandum of its terms, subscribed by the parties to be charged (Personal Property Law, sec. 31 [now General Obligations Law, § 5-701] * * *).

The defendants signed a memorandum which continued an existing employment, but which did not describe its duties. *The question is whether the position may be identified by proof of the surrounding circumstances.* The employment under the new contract began in January. The memorandum was not signed till the following December. *It assumes the existence of a position which the plaintiff is then filling.* It says that the employment shall be continued for a term and at a salary prescribed. *A position then held is carried forward and preserved.* The tests to be applied in order to identify the employment are thus embodied in the writing. We are not left to gather the relation between the parties from executory promises. We are informed that the relation then existing is the one to be maintained. If A agrees to sell to B 'the house and lot now occupied by the seller,' the description is not void because the bounds of occupation must be established by parol * * * It is not otherwise where A agrees with B that a position in A's service then held shall be continued. 'I will keep you until January 1, 1916, at so much a year, in your present place.' By necessary implication, by inevitable construction, that is what this memorandum says. It makes no difference whether the place is land to be occupied or a relation of employment to be filled. Whether it is one or the other, *we do not violate the statute when we fit the description to the facts.* In thus identifying the position we are not importing into the contract a new element of promise. *We are turning signs and symbols into their equivalent realities. This must always be done to some extent, no matter how many are the identifying tokens.* 'In every case, the words must be translated into things and facts by parol evidence' (HOLMES, J., in *Doherty v. Hill, supra,* [144 Mass 465, 468]; *Mead v. Parker,* [115 Mass 413, 415]; 4 Wigmore on Evidence, sec. 2454). How far the process may be extended is a question of degree *(Doherty v. Hill, supra,* p. 469). We exclude the writing that refers us to spoken words of promise. We admit the one that bids us ascertain a place or a relation by comparison of the description with some 'manifest, external, and continuing fact' *(Doherty v. Hill, supra,* p. 469). *The statute must not be pressed to the extreme of a literal and rigid logic.* Some compromise is inevitable if words are to fulfill their function as symbols of things and of ideas. *How many identifying tokens we are to exact, the reason and common sense of the situation must tell us.* 'What, then, is a sufficient description in writing? No one can say beforehand' * * * 'You cannot

have a description in writing that will shut out all controversy, even with the help of a map' (Ibid). *'In every case it must be considered what is a sufficient description with reference to the surrounding circumstances and the facts'* (JESSEL M. R., in *Catlin v. King,* [5 Ch. D. 660, 664]). *Some description there must be. Its adequacy depends upon the degree of certainty attained when the words are applied to things.* From correspondence we infer identity * * * A has been employed by B as a bookkeeper and accountant. He receives a writing to the effect that his employment, which is stated to have begun some years before, is continued, for a given term. We shall make a farce of the statute if we say that oral evidence is incompetent to show that A is not expected to do the work of a porter. 'There is no mystery about the Statute of Frauds' (CHITTY, L. J., in *Plant v. Bourne,* [(1897) 2 Dh. 281]). *The memorandum* which it requires, like any other memorandum, *must be read in the light of reason* (Ibid)." *(Marks v Cowdin, supra,* at pp 142-144; emphasis supplied.)

The memorandum herein (the profit-sharing agreement) describes plaintiff as a *present employee* of one or more of the "Constituent Corporations" and states that Gould and Fell (in effect the employer) want him *"to remain so employed"* for the term of the "Earnings Period," "the three year period ending February 28, 1978." This writing thus bids us ascertain the relation by comparison of the description with some manifest, external and continuing fact. Further, the three-year term of the employment is specifically delineated in the writing. To hold that the writing (the profit-sharing agreement) does not bind the employer to employ plaintiff for the definite term of three years renders the profit-sharing agreement illusory from plaintiff's point of view, as he is entitled to share in the profits only if he is employed, and obviously if the employer can simply fire plaintiff at will, the employer can thereby frustrate plaintiff's entitlement to share in the profits also at will. Yet, our dissenting brethren do not regard the profit-sharing agreement as illusory. Voluntary termination of the employment at will is specifically given only to the employee (plaintiff) in the written memorandum (the profit-sharing agreement) *and not to the employer.*

As for the absence from the written memorandum (the profit-sharing agreement) of a specified rate of compensation to be paid to plaintiff employee (the agreement merely stating that the payments to be made under it by Gould and Fell

"shall be in addition to any compensation the Employee may * * * be entitled to receive from the Constituent Corporations", his employer), it is well recognized that "[a] memorandum would not, however, be insufficient because it fails to state a method for computation of the compensation to be paid, nor even if it entirely omitted the amount or percentage to be paid" (56 NY Jur, Statute of Frauds, § 203, p 285; see, also, *Dias v Tire Mart,* 27 Misc 2d 24, mod on other grounds 18 AD2d 978). While the written words may not completely formulate the terms of the promised employment, they quite clearly describe the promised employment complete in every term and condition by reference to existing, external facts. In *Stulsaft v Mercer Tube & Mfg. Co.* (288 NY 255), the Court of Appeals found the written memorandum which did not in express terms state the compensation which the plaintiff was to receive or define the conditions of employment to be sufficient under the Statute of Frauds. In reiterating the persuasive rationale of Judge CARDOZO set forth in *Marks v Cowdin (supra)* the court declared: "Parties often reach a complete agreement upon all the terms of a contract though not all the terms have been discussed. The relations of the parties, the customs of the trade or other facts and circumstances known to the parties, may give rise to a necessary inference that when agreement has been reached upon the terms which have been the subject of discussion, a common understanding and agreement has been reached in regard also to terms which were in the minds of all the parties, though not discussed. A complete agreement so made is not void under the Statute of Frauds, though the writing which is intended to satisfy the statute sets forth only the promises upon which there has been discussion and express agreement, provided the writing itself *when read with reference* to the relations of the parties and the surrounding circumstances known to both, sufficiently identifies also the other terms and conditions where agreement was tacit" *(Stulsaft v Mercer Tube & Mfg. Co., supra,* at p 259; emphasis supplied). The statement in the partial dissenting opinion of Justice CARRO that "[t]o satisfy the Statute of Frauds, the written memorandum must state the entire contract with reasonable certainty, so that its substance will appear *without any resort to parol evidence"* is misleading and, if taken *in a literal sense* as prohibiting the utilization of parol evidence in all situations involving a determination of whether the written memorandum is sufficient under the Statute of Frauds, is incorrect as a proposition of law. The

rule is not simply that envisioned in said partial dissenting opinion, to the effect that the written words of the memorandum must completely formulate the terms of the promised employment; the rule also permtis satisfaction of the Statute of Frauds where the written words merely describe the promised employment complete in essential terms and conditions by reference to existing, external facts, i.e., where the written words "when read in the light of the relations of the plaintiff and the defendant and the other circumstances recognized by both when the promise was made, includes 'by necessary implication, by inevitable construction,' a promise to pay compensation as alleged in the complaint" *(Stulsaft v Mercer Tube & Mfg. Co., supra,* at p 258). To accomplish this end, parol evidence is permitted not to vary the written words of the memorandum, but to explain them (see *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48). The parol evidence admitted at trial as to the nature of the existing external facts, to wit, the prior employment relationship, the terms of that relationship and the rate of compensation due the employee thereunder—all undisputed—clearly demonstrate that the written memorandum (the profit-sharing agreement) constitutes a signed acknowledgement of the three-year oral employment còntract.

The partial dissenting opinion of Justice CARRO misconceives the relevance of the parol evidence in a case involving the Statute of Frauds. "Where it is clear from the writings themselves that they do not constitute a memorandum sufficient to satisfy the statute, it is 'immaterial' * * * whether or not they 'accurately reflect and contain all of the pertinent terms of a prior alleged oral agreement * * * which does not purport to be authenticated by any signature of the defendants or their agent' * * * In other words, where the writings are plainly insufficient on their face, the conclusion follows, as a matter of law, that they do not satisfy the Statute of Frauds" *(Scheck v Francis,* 26 NY2d 466, 472). Here, in the written memorandum, there is no total absence of a necessary term either by express formulation or descriptive symbolism or a total lack of *in praesenti* language (see *Ideal Structures Corp. v Levine Huntsville Dev. Corp.,* 396 F2d 917; *Scheck v Francis, supra; Marks v Cowdin,* 226 NY 138, *supra).*

Merely because the written acknowledgment of the oral employment contract is contained in a written agreement, which has as its main purpose the terms and conditions of

profit sharing between the parties, does not detract from its status as such written acknowledgment. Yet, this ill-advised precedent is exactly what Justice CARRO's partial dissenting opinion urges. "Since a memorandum is required only to evidence the contract and not to constitute it, the form of the memorandum is immaterial, and anything actually under the hand of the party sought to be charged, admitting that he has entered into the contract, will be sufficient to satisfy the statute" (56 NY Jur, Statute of Frauds, § 164, pp 239-240).

The inherent advantages of a nontechnical and not too rigid approach to the Statute of Frauds as epitomized by open-mindedness and a keen perception of reality, as a web of interrelated facts and circumstances is self-evident. In opting for the acute exegisis of Judge CARDOZO in *Marks v Cowdin (supra)* we serve to honor precedent, to accomplish justice, and to deter fraud. "Whether a note or memorandum is sufficient depends upon the facts and circumstances of the particular case, and it should be construed in the light of proofs of the surrounding circumstances as they may be received on the trial" (56 NY Jur, Statute of Frauds, § 164, p 240). "[T]here is a difference between a contract in writing and a note or memorandum thereof; the latter does not constitute the agreement, but is merely evidence of it" (56 NY Jur, Statute of Frauds, § 360, pp 487-488).

The instant analysis does not reflect on cases holding that this type of service contract is not within the Statute of Frauds in which event the oral contract would be provable at trial without the necessity of overcoming the bar of the Statute of Frauds, but *assumes* that the oral agreement between the parties is within the ambit of the Statute of Frauds (see *Harris v Home Ind. Co.,* 6 AD2d 861). The term of the oral contract of employment is not negated by the references in the written profit-sharing agreement to the employment agreement, but is specifically and clearly set forth.

As aptly noted in *Harris v Home Ind. Co. (supra)* it is illusory to consider the employment contract terminable or performable within one year from the point of view of the employer-defendants, and it is to those defendants, the parties to be charged, alone, that the Statute of Frauds is designed to provide protection from fraud and perjury. Accordingly, for purposes of applicability of the Statute of Frauds, the contract of employment is viewed as not performable within a year, but as having a definite three-year term. It is "crystal clear"

on this record that the profit-sharing agreement serves as a note or memorandum sufficient to satisfy the Statute of Frauds. The question is whether the employer defendants orally agreed to employ plaintiff for three years. The Statute of Frauds mandates a written note or memorandum under such circumstances. The profit-sharing agreement *is* that note or memorandum.

The effect of the written agreement dated as of March 25, 1975 between plaintiff and defendants Fell and Gould is to remove the Statute of Frauds as a defense. Plaintiff still had the burden of demonstrating the existence of an oral contract of employment as alleged in the complaint at trial. Plaintiff was discharged by Gould and Fell on October 8, 1976. This discharge, according to plaintiff, was without cause, and, according to defendants Gould and Fell, was for cause. Plaintiff claimed the oral contract to be one binding on defendant employers for a term of three years while said defendants claim the contract of employment was terminable by either side at will. The jury found in plaintiff's favor that he was discharged without cause and found in plaintiff's favor on his claim that he had an oral three-year contract of employment. It was improper, as a matter of law, for the trial court to find subsequent to the jury determination that the oral three-year contract was violative of the Statute of Frauds.

The jury determination as to liability denotes the jury's finding that the October 8, 1976 firing of plaintiff was in breach of this oral employment agreement. Parenthetically, it is noted that the trial court's ruling as a matter of law that plaintiff had failed to make out a prima facie case against defendants Interco Incorporated, Sidney Gould Co. Ltd. and Goodline Sportswear, Inc., apparently on the ground that there was no proof of an employment relationship, was, on the record, erroneous as to Goodline Sportswear, Inc. Plaintiff's declaration at trial that he was also employed by this latter corporation was not rebutted by defendants. Indeed, even on appeal, the briefs of the parties treat the Gould and Fell corporations (Sidney Gould Co. Ltd., Village Industries, Inc. and Goodline Sportswear, Inc.) as if they were one enterprise. However, as I perceive no compelling need to pierce the corporate veil, and as it has not been demonstrated that these corporations were operated in such a way as to be mere instrumentalities and agents of each other, these business entities will be viewed as separate and distinct.

Having now concluded, as a matter of law, that on this record liability has been established and found as to defendants Village Industries, Inc. and Goodline Sportswear, Inc. for breach of plaintiff's employment contract, we address the issue of the propriety of the trial court's taking the damage issue away from the jury by charging them that if they found in plaintiff's favor on the oral employment contract, they could only find damages to the extent of $1,400. In this regard we note the candor of defendants' acknowledgment in their brief on appeal that the court's computation of the amount of damages is in error. Defendants contend on appeal that the maximum amount of damages which may be awarded to plaintiff for breach of the employment contract is $5,000. This contention does not address itself to plaintiff's claim that he was entitled to additional compensation of $2,500 per annum which was promised to him by his employers under the guise of a $2,500 per year drawing account to cover expenses which were not to be itemized, i.e., plaintiff did not have to account to his employer in availing himself of the drawing account. At trial, plaintiff testified that the account was not a genuine expense account, but was subject to his use as a way to increase his income. Again, defendants fail to rebut this unequivocal statement made under oath. Accordingly, on this record it must be concluded that this amount was a proper item of damage and the court erred in failing to take this amount into its computation.

■ All parties concede, and we agree, that the plaintiff's damages for breach of the oral employment contract are, on this record, so clear that the court must make the determination itself. As noted in *Cornell v T. V. Dev. Corp.* (17 NY2d 69, 74), " 'The plaintiff is entitled to damages which will compensate him for the defendant's breach of contract. *Prima facie* the measure of such damage is "the wage that would be payable during the remainder of the term;" but this is only the *prima facie* measure. The actual damage is measured by the wage that would be payable during the remainder of the term reduced by the income which the discharged employee has earned, will earn, or could with reasonable diligence earn during the unexpired term. (*McClelland v. Climax Hosiery Mills,* 252 N.Y. 347, 358.) * * *' (Hollwedel v. Duffy-Mott Co., 263 N.Y. 95, 101, 104.)" Computation, based upon the clear proof of damages in the record, discloses that plaintiff's damage arising from breach of the oral employment contract by

defendants Village Industries, Inc. and Goodline Sportswear, Inc. amounts to $15,105.50.[1]

■ We now direct attention to the issues raised on this record in connection with the written profit-sharing agreement between plaintiff and defendants Gould and Fell. This agreement specifically provides that "[i]n the event the [plaintiff] is an employee of one or more of the [Gould-Fell] Corporations or their successors *during the Earnings Period,* each of Gould and Fell, severally and not jointly, shall pay to the [plaintiff] an amount equal to 1½% of the Earnings Payment, if any, received by him from Interco pursuant to the Agreement." (Emphasis supplied.) Defendants Gould and Fell (and the other defendants) do not take issue with the jury's finding as to the individual defendants' liability to plaintiff under the profit-sharing agreement. The jury found that plaintiff had not been discharged for cause as that term is defined in the profit-sharing agreement.[2] The trial court reserved for itself the issue of damages and directed a verdict on damages in favor of plaintiff in the amount of $2,760.27 against defendants Gould

---

1. The sum of $15,105.50 is computed as follows:

| | |
|---|---|
| Moneys plaintiff would have received working for said defendants — three-year employment from March, 1975 through February, 1978 at $41,600 a year ................ | $124,800.00 |
| Three years' bonus at $5,000 a year .......................... | 15,000.00 |
| $2,500 per annum additional compensation (3 years) ........... | 7,500.00 |
| | $147,300.00 |
| | |
| Moneys plaintiff actually received — From said defendants from March, 1975 through February, 1976 (including one year's bonus) ................................ | $ 46,600.00 |
| From March, 1976 through October 8, 1976 (including one month severance), at rate of $41,600 per year ($3,466 per month for eight and one-quarter months) ........... | 28,594.50 |
| From Kimberly (plaintiff's new employer after said defendants' breach) from December, 1976 through February, 1977 at rate of $40,000 per annum ................. | 10,000.00 |
| From March, 1977 through February, 1978 at rate of $47,000 per annum ....................................... | 47,000.00 |
| | $132,194.50 |

| | |
|---|---|
| Moneys to be received .............. | $147,300.00 |
| Moneys actually obtained .......... | 132,194.50 |
| | $ 15,105.50 |

2. Paragraph 3 of the profit-sharing agreement states that "the term 'cause' means dishonesty or gross dereliction of duty."

and Fell. The narrow issues thus raised with respect to the award under the profit-sharing agreement are whether the trial court erred in restricting plaintiff's proof of his damages regarding such agreement to the three-year earnings period ending February 28, 1978, and erred in taking the damage issue away from the jury. Reason and the clear circumstances presented by the record impel the conclusion that the trial court did not err in rejecting plaintiff's endeavor to introduce a May, 1977 modification of the November, 1974 agreement between Gould, Fell and Interco whereby the "Earnings Period" was changed from the three fiscal years ending February 28, 1978 to the three fiscal years ending February 28, 1979.

In his complaint, plaintiff alleged an oral three-year employment contract whereby the Gould-Fell corporations at or prior to March, 1975 agreed to continue plaintiff's employment until February 28, 1978. Thereafter, the employer was free to terminate such employment at will. This understanding is embodied in the profit-sharing agreement between plaintiff and Fell and Gould dated as of March 25, 1975. From the recital and terms of that agreement it appears that plaintiff was to be employed by certain of the Gould-Fell corporations for three years, i.e., until February 28, 1978; that plaintiff could be discharged during that period only for cause and that, apparently insofar as plaintiff himself was concerned, he could voluntarily terminate his employment at will during this period.

It is noteworthy that the consideration enunciated in the agreement for defendants' (Gould and Fell) action in entering into the profit-sharing agreement with plaintiff was "to induce [plaintiff] to *remain* so employed *and to use his best efforts* to maximize the Earnings Payments". (Emphasis supplied.)

As the defendants Gould and Fell had the right to terminate plaintiff's employment after February 28, 1978, with or without cause, and as plaintiff's right to share in the profits after such date rested solely on the fact of continued employment by the Gould-Fell corporations, he obtained no vested interest in the profits generated after February 28, 1978, even assuming the applicability in some fashion of the May, 1977 modification of the 1974 agreement between Gould, Fell and Interco to the 1975 profit-sharing agreement between Gould, Fell and plaintiff. Parenthetically, it should be noted that *the modification was entered into many months subsequent to the*

*October 8, 1976 discharge of plaintiff by Gould and Fell* on behalf of Village Industries, Inc. and Goodline Sportswear, Inc.

There has been no demonstration of a fraud practiced upon plaintiff by virtue of the amendment, and as the plaintiff was not a party to such amendment, and as the amendment was not incorporated in the profit-sharing agreement by modification of that agreement so as to extend plaintiff's period of employment, plaintiff cannot claim as damages any element embraced within that modification. Contrary to plaintiff's assertions on appeal, the profit-sharing agreement does not give defendants Gould and Fell the power to change the "Earnings Period" set forth in the 1974 agreement as amended on March 3, 1975 between Gould, Fell and Interco. There is no latent or patent ambiguity in the profit-sharing agreement.

■ Further, on this record the trial court properly took the damage issue from the jury with respect to the damages plaintiff sustained under the profit-sharing agreement for breach of the employment contract. Paragraph 2 of the profit-sharing agreement, in effect, is a damage liquidation clause and provides that if the employer discharges the employee "for any reason" (apart from the employer discharging the plaintiff for cause, or the plaintiff voluntarily leaving at any time during the three-year term of employment in which event the plaintiff would not be entitled to any payment under the profit-sharing agreement), such as occurred here, namely, a discharge without cause as defined in paragraph 3 of the profit-sharing agreement, the plaintiff would obtain only a percentage share of the profits computed as follows: "payment * * * shall be reduced by an amount equal to the product of (a) such payment and (b) a fraction, the numerator of which is the number of days during the Unemployed Portion and the denominator of which is the total number of days during the Earnings Period."

At trial, plaintiff had the burden of proof of demonstrating his damages in consequence of the breach of his employment agreement. The parties have submitted as part of the record on appeal two letters from defense counsel to plaintiff's counsel dated April 16, and May 8, 1979, respectively. These letters constitute an admission that the net profit (loss) over the base of $1,300,000 for the three-year period ending February 28,

1978 amounts to $363,683.58.[3] Applying the formula agreed to by plaintiff and Gould and Fell in the profit-sharing agreement, it is clear that plaintiff's liquidated damages amount to $2,924.32 and were erroneously computed by the trial court at $2,760.27.[4]

Justice CARRO in his partial dissenting opinion misconstrues the provisions of the profit-sharing agreement and overlooks the testimony at trial in computing the plaintiff's damages under that agreement to be $3,868.45 rather than $2,924.32. What he has done is to view each year of the three-year "Earnings Period" as set forth in the profit-sharing agreement singly (i.e., in isolation from the other two years) and not in conjunction with and cumulatively as required by the agreement and as testified to by the parties at trial. Thus, he

---

**3.** At trial, defense counsel relied on the figures set forth in these letters in persuading the trial court to arrive at the sum of $2,760.27 as the liquidated damages sustained by plaintiff under the profit-sharing agreement in consequence of the breach of the employment agreement.

**4.** Damages are computed in the sum of $2,924.32, as follows:

| Year | Net Profit (Loss) Over Base $1,300,000 |
|------|----------------------------------------|
| 2/28/76 | ($191,475.00) |
| 2/28/77 | 281,052.31 |
| 2/28/78 | 274,106.27 |
| | $363,683.58 |

The three-year "Earnings Period" comprises 1,095 days, and 508 of those days comprise the remaining period of that term during which plaintiff was not employed by Village Industries, Inc., and another, having been discharged on October 8, 1976. Accordingly, the formula agreed to in the profit-sharing agreement applies as follows:

$$\$363,683.58 \times \frac{508}{1095} = \$168,728.98$$

Deducting $168,728.98 from $363,683.58 gives $194,954.60 as the base upon which plaintiff's one and one-half% is computed. Accordingly,

$194,954.60
× .015
$2,924.32 - amount owed plaintiff.

Note: The loss figure of $191,475.00 is utilized as represented in the letter of April 16, 1979 because defendant did not correct same in the subsequent letter of May 8, 1979 and did not offer any countervailing proof at trial.

excludes from his computation the year ending February 28, 1976 because of the subsequent modification in May, 1977 of the 1974 agreement between Gould, Fell and Interco, which modification does not benefit plaintiff, to which he was not a party and which was agreed upon subsequent to plaintiff's employment being terminated, and because a loss rather than a profit was experienced in the year ending February 28, 1976. This ignores the clear statement in the profit-sharing agreement that "Gould and Fell are each entitled to receive an amount, not in excess of $1,000,000, from Interco if and to the extent the *average* annual earnings of the Constituent Corporations or their successors, determined as provided for in the Agreement [dated as of November 27, 1974, as amended on March 3, 1975 between Gould, Fell and Interco Incorporated], for the three year period ending February 28, 1978 ('Earnings Period'), exceed $1,300,000" (emphasis supplied). "Average" is defined in Webster's New Collegiate Dictionary (1953 copyright) as "A mean value, medial sum or quantity made out of unequal sums or quantities; an arithmetical mean . . . . Average, as here considered, is applied to a quotient obtained by dividing *the sum total of figures* by the number of those figures" (emphasis supplied). In ignoring the loss occasioned in the year ending February 28, 1976, Justice CARRO has opted to exclude the requirement that the sum total of figures for the three years be averaged.[5]

This error is further highlighted by the fact that the profit-sharing agreement also specifically requires that "each of Gould and Fell, severally and not jointly, shall pay to the Employee an amount equal to 1½% of the Earnings Payment, if any, *received* by him from Interco pursuant to the Agreement" (emphasis supplied). Fell testified at trial that the sums *received* by him from Interco for the three-year period as set forth in the profit-sharing agreement with plaintiff was approximately $171,000 and that Gould *received* the same amount. Thus, it is unequivocally clear that the amounts given to Gould and Fell by Interco were computed by taking the loss in the year ending February 28, 1976 into consideration. If Justice CARRO is correct in construing this unambiguous profit-sharing agreement by excluding the requirement that the sums for each of the three years be averaged, then Fell and Gould would each have received $277,579.29 from

5. The requirement that the annual earnings be averaged is also set forth in paragraph 4 of the profit-sharing agreement.

Interco. To reiterate, it is unquestionably clear from the record, from the briefs and from the conduct and argument of counsel that the three years of the "Earnings Period" were to be considered as a whole, as cumulative and not in isolation. No basis in law exists for the construction placed upon the profit-sharing agreement by Justice CARRO which excluded the first of the three years of the "Earnings Period" in computing plaintiff's damages.

No fault is found with respect to the dismissal of plaintiff's claim for exemplary damages.

Accordingly, the judgment of the Supreme Court, New York County (I. SMITH, J.), entered October 2, 1979, after a jury trial, which, *inter alia,* dismissed the complaint as to defendants Interco Incorporated, Sidney Gould Co. Ltd., Goodline Sportswear, Inc. and Village Industries, Inc. and awarded plaintiff the sum of $2,760.27, with interest, as against defendants Theodore Fell and Sidney M. Gould, insofar as appealed from, should be modified, on the law, to the extent of reversing the dismissal of plaintiff's complaint as against defendants Village Industries, Inc. and Goodline Sportswear, Inc., and plaintiff should be awarded the sum of $15,105.50, with interest, as against defendants Village Industries, Inc. and Goodline Sportswear, Inc. with respect to his claim for damages for breach of his employment contract, and the amount of damages awarded plaintiff resulting from the breach of the agreement, dated March 25, 1975, as against defendants Sidney Gould and Theodore Fell, should be revised upward to the sum of $2,924.32, with interest, and, as so modified, the judgment should be affirmed.

BLOOM, J. (dissenting in part). I am unable to agree with the majority that the Statute of Frauds (General Obligations Law, § 5-701, subd a) does not bar suit on this claimed three-year oral contract of employment. Contrary to the conclusion reached by them, the recital in the profit-sharing agreement of March 25, 1975, is insufficient to constitute "some note or memorandum [of the alleged three-year oral agreement of employment] in writing, and subscribed by the party to be charged". The recital referred to is no more than a precatory statement. It reflects the intent of the parties. That plaintiff was not bound by the three-year term and was left free to terminate his employment without incurring any liability for breach of the so-called "oral agreement" is manifest from other provisions of the profit-sharing agreement. Thus, the

obligation to share profits set forth in paragraph 1 is conditioned upon plaintiff's remaining an employee during the defined earnings period. Paragraph 3 confers upon plaintiff the right to "voluntarily" terminate his employment with the forfeiture of his right to share in the profits as the only penalty to be incurred therefor. Not only do these provisions negate agreement as to a fixed term, they made clear that no fixed term existed. Hence, no note or memorandum sufficient to meet the mandate of the statute was ever executed.

On the other hand, I agree with the conclusion of the majority that the amendment of the agreement between Gould and Fell, on the one hand, and Interco, on the other, dated May 24, 1977, which changed the period which would serve as a basis for computing the right of Gould and Fell to share in the earnings of Interco from the three-year period preceding February 28, 1978 to the three-year period preceding February 28, 1979 did not inure to the benefit of plaintiff. This amendment to the original agreement followed by some time plaintiff's departure from employment. Plaintiff's agreement with Gould and Fell expressly limited his right to share in their profits to the three-year period ending February 28, 1978. Nothing in the agreement of May 24, 1977 between Gould and Fell and Interco and nothing in the evidence presented at the trial indicated an intent to make plaintiff the beneficiary of the agreement. Hence, he is not entitled to use the three-year period ending February 28, 1979 as a base for computing his share of the profits.

There remains only the computation of damages to be assessed in connection with the profit-sharing agreement. Using the formula so meticulously worked out by Justice LUPIANO, this would entitle plaintiff to damages of $2,924.32.

Accordingly, I would modify the judgment to the extent only of awarding damages to plaintiff in that sum and otherwise affirm.

CARRO, J. (partial dissent). Gould and Fell were the sole stockholders of the "Gould-Fell Companies", i.e., Village, Goodline and Gould Co. They hired plaintiff Abady in 1972 as manufacturing manager. In January, 1975 they advised him that they were about to sell out to Interco, but were to continue to run the companies and intended to retain their key employees, including Abady. In March, 1975 the sale of their stock was completed, and Gould and Fell were given three-year employment contracts with Interco and a bonus

"earnings payments" contract, based upon the average pretax net profits of the corporation for the three calendar years ending February 28, 1978. On May 24, 1977, that agreement was amended to change the base period on which the Gould-Fell "earnings payments" were to be computed, to the three-year period ending February 28, 1979.

Abady alleges a three-year oral employment contract with Gould and Fell on the same terms as his prior employment with them except that, "if for any reason they should leave Interco prior to the three years, then the contract would be off because * * * it would be up to Interco at that time." In addition, in order to induce Abady to remain in their employ and to use his best efforts to maximize the earnings payments from Interco, Gould and Fell entered into a written contract, dated March 25, 1975, with Abady to the effect that, in the event he is an employee during said earnings period, Gould and Fell, each individually, shall pay to him an amount equal to 1½% of the earnings payment, if any, received by them, pursuant to their agreement with Interco. Abady continued to work for the Gould-Fell companies until October 8, 1976, when he was fired by Gould.

Abady sued to recover damages for breach of the oral contract of employment and breach of his earnings-payments-participation (i.e., profit-sharing) contract. During the trial, the court denied plaintiff's offer of proof to show that the base period upon which the profit sharing was to be computed was changed from February 28, 1976-78 to February 28, 1977-79, by amendment to Gould and Fell's contract with Interco. The jury returned a verdict in favor of plaintiff on his claim of wrongful termination of the oral three-year employment contract and in favor of plaintiff, on a special verdict as to liability, on his earnings-participation agreement. The trial court set aside the jury verdict and dismissed the complaint as to the oral employment contract, on the ground that it was unenforceable because of the Statute of Frauds, and computed plaintiff's damages under the participation agreement in the sum of $2,760.27.

Since Abady expressly states his oral employment contract with Gould and Fell was for a period exceeding one year, i.e., three years, it is by its terms within the Statute of Frauds (General Obligations Law, § 5-701, subd a), unless performance is possible within one year or unless "some note or memoran-

dum thereof [is] in writing, and subscribed by the party to be charged therewith".

Plaintiff argues the general rule that if performance is possible within the year, however unlikely or improbable that may be, the agreement does not come within the proscription of the statute. Thus, he maintains, the oral provision that "if for any reason they should leave Interco prior to the three years, then the contract would be off because * * * it would be up to Interco at that time" provides for the possibility of performance within a year, thereby taking his oral contract out from the statute. However, we perceive this provision to be destructive of, and not in fulfillment of the contract. "As a general rule, if an agreement cannot be completely performed within a year, the fact that further performance may be excused or rendered impossible by the happening of a contingency is not sufficient to take it out of the statute, for an excuse for no further performance is not equivalent to full performance. In other words, termination of a contract by reason of the impossibility of further performance as a result of the happening of a contingency is not performance, but rather destruction, of the contract, and the court must distinguish between 'performance' which fulfils the contract and circumstances which defeat its purpose." (56 NY Jur, Statute of Frauds, § 21.) As the court said in *Zupan v Blumberg* (2 NY2d 547, 552) "The contract was not, then, one which might be *performed* within a year, but rather one which could only be *terminated* within that period * * * The possibility of such wrongful termination is not, of course, the same as the possibility of performance within the statutory period."

Justice Lupiano observes that the earnings-participation agreement between Abady, Gould and Fell serves as a sufficient memorandum under the statute of the oral employment contract. I disagree.

Pertinent portions of that agreement are reproduced as follows:

"AGREEMENT dated as of March 25, 1975 among Sidney Gould ('Gould'), Theodore Fell ('Fell') and Al Abady (Employee). * * *

"The Employee is presently an employee of one or more of the Constituent Corporations and intends to continue as an employee thereof during the Earnings Period. In order to induce the Employee to remain so employed and to use his best efforts to maximize the Earnings Payments, Gould and

Fell desire to compensate the Employee as provided for herein.

"NOW, THEREFORE, the parties hereto, desiring legally to be bound, hereby agree as follows:

"1. In the event the Employee is an employee of one or more of the Constituent Corporations or their successors during the Earnings Period, each of Gould and Fell, severally and not jointly, shall pay to the Employee an amount equal to 1½% of the Earnings Payment, if any, received by him from Interco pursuant to the Agreement.

"2. In the event the Employee is not employed by any of the Constituent Corporations or their successors for any reason during any portion ('Unemployed Portion') of the Earnings Period, each payment to be made to the Employee pursuant to Section 1 hereof shall be reduced by an amount equal to the product of (a) such payment and (b) a fraction, the numerator of which is the number of days during the Unemployed Portion and the denominator of which is the total number of days during the Earnings Period.

"3. The foregoing to the contrary notwithstanding, in the event the Employee voluntarily terminates his employment with the Constituent Corporations or their successors during the Earnings Period or is discharged for cause, the Employee shall not be entitled to any payments under this Agreement. For purposes hereof, the term, 'cause' means dishonesty or gross dereliction of duty.

"4. Gould and Fell, in their sole and absolute discretion, shall make all decisions with Interco concerning the average annual earnings of the Constituent Corporations or their successors, the amount and time of payment of the Earnings Payments and all other matters relating thereto, and their decisions shall be conclusive and binding on the Employee. The Employee's sole right with respect thereto shall be to receive the payments provided for herein. * * *

"5. All payments to be made hereunder shall be in addition to any compensation the Employee may otherwise be entitled to receive from the Constituent Corporations or their successors * * *

"8. This Agreement * * * (b) contains the whole understanding of the parties with respect to the subject matter hereof, (c) may not be modified except by an instrument in writing signed by the party to be charged".

To satisfy the Statute of Frauds, the written memorandum must state the entire contract with reasonable certainty, so that its substance will appear without any resort to parol evidence. It must completely evidence the contract which the parties made.

"It has long been settled that to satisfy the Statute of Frauds, the 'memorandum must contain substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is'". (*Kobre v Instrument Systems Corp.,* 54 AD2d 625, 626, quoting *Mentz v Newwitter,* 122 NY 491, 497.)

The agreement partially reproduced above, fails this test. It does not refer to the same transaction as the oral contract and does not contain its terms. It was written for the specific purpose of inducing the plaintiff to remain in defendant's employ during the earnings period and "to use his best efforts to maximize the Earnings Payments," and we may not infer therefrom that the defendants intended to bind themselves to an employment for a definite term. It does not supply a fixed term of three years, but provides for percentage payments under certain conditions, if plaintiff's association continues for up to a three-year period, to which plaintiff is not bound, nor does it contain a mention of the fixed, regular compensation to be earned by plaintiff as salary, etc. As LUPIANO, J., stated in *Belfert v Peoples Planning Corp. of Amer.* (22 Misc 2d 753, 756-757, affd 11 AD2d 760) "At most, they [the writings] do no more in connection with the employment than to indicate the existence of a contractual relation between the parties or a possibility that the association may produce a working relationship for as long as [three] years but under circumstances rendering the association actually one at will. This is not enough to create an enforcible obligation".

The "Earnings Period" as provided for in the recital clauses of the March 25, 1975 agreement between Gould, Fell and Abady, is the three-year period ending February 28, 1978. The November 27, 1974 agreement between Gould, Fell and Interco was amended on May 26, 1977 to change that "Earnings Period" to the three-year period ending February 28, 1979. This entitled Gould and Fell to receive their earnings payments computed on a formula using this new period as a base, and eliminating the year ending February 28, 1976. As it turned out, this was decidedly to their financial advantage.

At trial, Abady offered this amendment into evidence to

show the actual base period used for the computations and the actual amounts received by Gould and Fell under their agreement with Interco. The application was denied and the evidence excluded and therefore not used by the trial court for the computation of Abady's damages under his earnings participation contract.

Should Abady, not a party to the contract between Gould, Fell and Interco; and not a party to the May 24, 1977 amendment of that contract; and clearly not an intended beneficiary of that amendment, having been previously fired on October 8, 1976, nevertheless be entitled to enforce it against Gould and Fell, so as to receive its benefit?

I think not. It is the generally accepted rule that an intent to confer a direct benefit on a third party must clearly appear in order to enable such a party, not named in the contract, to recover thereunder. *(Snyder Plumbing & Heating Corp. v Purcell,* 9 AD2d 505.) The benefit so conferred must not be merely incidental. *(Salzman v Holiday Inns,* 48 AD2d 258.)

Since the "Earnings Period" for the calculation of the payments to Abady may not include the base year ending February 28, 1979, may it then include the base year ending February 28, 1976, which was eliminated from the formula by the May, 1977 amendment? Paragraph 1 of Abady's March 25, 1975 agreement specifically states that Gould and Fell, "shall pay to the Employee an amount equal to 1½% of the Earnings Payments, if any, *received*[1] by him from Interco pursuant to the Agreement." Quite evidently "1976" may not be included, since the first operative clause specifically provides that only earnings payments *received* by Gould and Fell shall be subject to Abady's profit-sharing agreement, and that year's figures were not in the formula upon which Gould and Fell received payment.

A conflict or ambiguity is therefore created, since, if the agreement is to be given effect, only two years of the "Earnings Period" remain subject to the computations, while the recitals refer to a three-year "Earnings Period". The recitals in a contract indicate the background and purpose of the parties, and where a recital and an operative clause are inconsistent, the operative clause should prevail *(Musman v Modern Deb,* 56 AD2d 752). Such inconsistency or ambiguity imposes upon the court a duty to reconcile and harmonize the

---

1. Emphasis added.

apparently conflicting provisions (10 NY Jur, Contracts, § 214; *Fox Film Corp. v Hirschman,* 122 Misc 354, affd 212 App Div 837) and to effectuate the spirit and purpose of the agreement, which here was to permit the employee a share of the profits for that portion of the period during which he remained employed. It is the substance of an agreement rather than its form which must control its interpretation. (10 NY Jur, Contracts, § 194; *Atwater & Co. v Panama R. R. Co.,* 246 NY 519.)

The March 25, 1975 agreement should therefore be interpreted to permit the use of the two years ending February 28, 1977 and February 28, 1978 as the base for Abady's profit sharing.

Accordingly, I would modify the judgment herein to the extent only of remanding to the Supreme Court for proceedings not inconsistent herewith, to determine the plaintiff's damages pursuant to that agreement and would otherwise affirm.

Ross, J. P., and MARKEWICH, J., concur with LUPIANO, J.; BLOOM and CARRO, JJ., dissent in part in separate opinions.

Judgment, Supreme Court, New York County, entered on October 2, 1979, modified, on the law, to the extent of reversing the dismissal of plaintiff's complaint as against defendants Village Industries, Inc. and Goodline Sportswear, Inc., and plaintiff is awarded the sum of $15,105.50, with interest, as against defendants Village Industries, Inc. and Goodline Sportswear, Inc. with respect to his claim for damages for breach of his employment contract, and the amount of damages awarded plaintiff resulting from the breach of the agreement, dated March 25, 1975, as against defendants Sidney Gould and Theodore Fell, is revised upward to the sum of $2,924.32, with interest, and, as so modified, the judgment is affirmed.