**Robert S. OHANIAN, Plaintiff-Appellee, Cross-Appellant,**

v.

**AVIS RENT A CAR SYSTEM, INC., Defendant-Appellant, Cross-Appellee.**

Nos. 1385, 1466, Dockets
85–7284, 85–7330.

United States Court of Appeals,
Second Circuit.

Argued June 27, 1985.

Decided Nov. 25, 1985.

---

David I. Goldblatt, New York City (Barry G. Felder, Proskauer Rose Goetz & Mendelsohn, New York City, of counsel) for defendant-appellant-cross-appellee.

Patrick M. Wall, New York City (Oren Root Jr., New York City, of counsel) for plaintiff-appellee-cross-appellant.

Before KEARSE and CARDAMONE, Circuit Judges and WYATT, District Judge.*

CARDAMONE, Circuit Judge:

Defendant Avis Rent A Car System (Avis) appeals from a judgment entered on a jury verdict in the Eastern District of New York (Weinstein, Ch.J.) awarding $304,693 in damages to plaintiff Robert S. Ohanian for lost wages and pension benefits arising from defendant's breach of a lifetime employment contract made orally to plaintiff. The jury also awarded Ohanian $23,100 in bonuses and moving expenses that did not depend on the oral contract. Avis argues that the alleged oral contract is barred by the statute of frauds, is inadmissible under the parol evidence rule and, in any event, that the evidence is insufficient to establish a promise of lifetime employment. Plaintiff cross-appeals seeking a new trial solely on the issue of damages claiming that jury confusion in the damage calculation resulted in a miscarriage of justice. Unpersuaded by defendant's arguments on its appeal and plaintiff's on his cross-appeal, we affirm.

## I BACKGROUND

Plaintiff Ohanian began working for Avis in Boston in 1967. Later he was appointed District Sales Manager in New York, and subsequently moved to San Francisco. By 1980 he had become Vice President of Sales for Avis's Western Region. Robert Mahmarian, a former Avis general manager, testified that Ohanian's performance in that region was excellent. During what Mahmarian characterized as "a very bad, depressed economic period," Ohanian's Western Region stood out as the one region that was growing and profitable. According to the witness, Ohanian was directly responsible for this success.

In the fall of 1980, Avis's Northeast Region—the region with the most profit potential—was "dying." Mahmarian and

* Honorable Inzer B. Wyatt, United States District Judge for the Southern District of New York, sitting by designation.

then Avis President Calvano decided that the Northeast Region needed new leadership and Ohanian was the logical candidate. They thought plaintiff should return to New York as Vice President of Sales for the Northeast Region. According to Mahmarian, "nobody anticipated how tough it would be to get the guy." Ohanian was happy in the Western Region, and for several reasons did not want to move. First, he had developed a good "team" in the Western Region; second, he and his family liked the San Francisco area; and third, he was secure in his position where he was doing well and did not want to get involved in the politics of the Avis "World Headquarters," which was located in the Northeast Region. Mahmarian and Calvano were determined to bring Ohanian east and so they set out to overcome his reluctance. After several phone calls to him, first from then Vice President of Sales McNamara, then from Calvano, and finally Mahmarian, Ohanian was convinced to accept the job in the Northeast Region. In Mahmarian's words, he changed Ohanian's mind

> On the basis of promise, that a good man is a good man, and he has proven his ability, and if it didn't work out and he had to go back out in the field, or back to California, or whatever else, fine. As far as I was concerned, his future was secure in the company, unless—and I always had to qualify—unless he screwed up badly. Then he is on his own, and even then I indicated that at worst he would get his [severance] because there was some degree of responsibility on the part of management, Calvano and myself, in making this man make this change.

Ohanian's concerns about security were met by Mahmarian's assurance that "[u]nless [he] screwed up badly, there is no way [he was] going to get fired ... [he would] never get hurt here in this company." Ohanian accepted the offer and began work in the Northeast Region in early February 1981.

In April 1981 Ohanian told Fred Sharp, Vice President of Personnel, that he needed relocation money that had been promised, but not yet received. Sharp subsequently sent two form letters to Ohanian: one from Sharp to Ohanian and the other, prepared by Avis, from Ohanian to Sharp. The second letter was a form with boxes for Ohanian to check to signify his choice of relocation expense plans. Ohanian checked one of the boxes, signed the form, and returned it to Sharp.

The following language appeared on the form that Ohanian signed and returned:

> I also hereby confirm my understanding that nothing contained herein or in connection with the change in my position with Avis shall be deemed to constitute an obligation on the part of Avis to employ me for any period of time, and both the company and I can terminate my employment at will.

> There are no other agreements or understandings in respect of my change in position with Avis or the moving of my residence except as is set forth or referred to herein, and in your confirmation letter to me dated April 21, 1981, and the agreements and undertakings set forth therein cannot be modified or altered except by an instrument in writing signed by me and by an executive officer of Avis.

At trial, Ohanian said that he did not believe he read the letter other than to check the relocation plan he desired. He testified that he did not intend this letter to be a contract or to change the terms of his prior agreement with Avis.

Seven months after Ohanian moved to the Northeast Region, he was promoted to National Vice President of Sales and began work at Avis World Headquarters in Garden City, New York. He soon became dissatisfied with this position and in June 1982, pursuant to his request, returned to his former position as Vice President of Sales for the Northeast Region. A month later, on July 27, 1982, at 47 years of age, plaintiff was fired without severance pay. He then instituted this action. Within three months of termination, plaintiff obtained a job as Vice President of Sales for

American International Rent A Car. His first year's salary at American International was $50,000 plus a $20,000 bonus. When Ohanian was fired by Avis, his yearly salary was $68,400, and the jury found that he was owed a $17,100 bonus that he had earned before being fired.

At the close of the evidence, the trial judge instructed the jury that to find for plaintiff it had to find that Ohanian's conversations with Mahmarian amounted to an oral contract that plaintiff would not be fired except for just cause, and that he would be paid severance pay no matter what the reason for termination. The judge also instructed the jury that if it found the letters exchanged between Sharp and Ohanian were a contract, it must find in favor of defendant. The jury was further instructed that if it found a contract not to terminate except for just cause, it had to determine if defendant had proved that the termination had been for just cause. If the termination was not for just cause, then the jury should decide if Ohanian was entitled to lost wages and benefits and, if so, in what amount. If the jury decided that termination was for just cause or that it was not for just cause but Ohanian was not entitled to lost wages and benefits, it would have to determine if plaintiff was entitled to severance pay and, if so, in what amount. The jury was given a special verdict sheet so that the court would know its answers to all of the above questions.

If the jury found that plaintiff was entitled to lost wages and benefits, it was instructed to compute them by first multiplying plaintiff's yearly salary by the number of years he would have remained at Avis had he not been fired. The jury was then directed to add to that amount the amount of pension benefits Ohanian would have received. From that total amount, the amount plaintiff had earned and would earn from other employment and the pension benefits from other employment was to be deducted. The sum reached was then to be reduced to its present value.

The jury returned with a verdict in which it found:

(1) That Ohanian had proven that Avis agreed to employ him until he retired unless he was terminated for just cause;

(2) That Avis had not proven that Ohanian was terminated for just cause;

(3) That Ohanian had proven that he was entitled to lost wages and pension benefits;

(4) That the present value of Ohanian's lost wages was $245,409;

(5) That the present value of Ohanian's lost pension benefits was $59,284;

(7) That Ohanian proved he was entitled to an award representing a $17,100 bonus; and

(8) That Ohanian proved he was entitled to an award representing incidental relocation expenses of $6,000.

Finally, to obviate the need for a new trial in the case of a judgment n.o.v. or a reversal on appeal, the trial court instructed the jury to deliberate on the amount of severance to which plaintiff would have been entitled if the jury had so found. The jury found that Ohanian would have been entitled to a three-month severance package.

Avis does not challenge the jury's finding that it had not proved that plaintiff was terminated for just cause. Neither has it appealed the awards for the bonus and relocation expenses. Both parties agree that New York law applies.

## II DISCUSSION

### A. The Statute of Frauds

Defendant's principal argument is that the oral contract that the jury found existed is barred under the statute of frauds, § 5–701 (subd. a, para. 1) of the General Obligations Law. Section 5–701 provides in relevant part:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged

therewith, or by his lawful agent, if such agreement, promise or undertaking ... [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

It has long been held that the purpose of the statute is to raise a barrier to fraud when parties attempt to prove certain legal transactions that are deemed to be particularly susceptible to deception, mistake, and perjury. *See D & N Boening, Inc. v. Kirsch Beverages*, 63 N.Y.2d 449, 453–54, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984). The provision making void any oral contract "not to be performed within one year" is to prevent injustice that might result either from a faulty memory or the absence of witnesses that have died or moved. *See id.;* 2 *Corbin on Contracts* § 444, at 534 (1950).

The fact that inconsistent theories have been advanced to explain the statute's enactment perhaps sheds light on modern courts' strict construction of it. Parliament enacted An Act for Prevention of Frauds and Perjuries in 1677 that required certain contracts to be evidenced by a signed writing. One theory for its enactment was that evidence of oral contracts tended to be susceptible to perjury and inherently unreliable. *See, e.g., Burns v. McCormick*, 233 N.Y. 230, 234, 135 N.E. 273 (1922) (Cardozo, J.) (passage of the statute of frauds was necessary because of the "peril of perjury ... latent in the spoken promise"). This view is premised on the theory that an interested plaintiff will testify untruthfully about the existence of an oral contract. Another view derives from the fact that in a seventeenth century jury trial the parties and all others interested in the outcome were incompetent to testify as witnesses. T. Plucknett, *A Concise History of the Common Law*, 55–56 (2d ed. 1936). To overcome that hurdle, so this theory goes, parties desiring legal protection for their transactions had to embody them in documents whose contents and authenticity were easily ascertainable. *Id.* at 56.

Whatever may be the fact with regard to the history of the statute, and whatever may have been the difficulties arising from proof that all sides agree brought about the enactment of the statute of frauds over 300 years ago, it is an anachronism today. The reasons that prompted its passage no longer exist. And, far from serving as a barrier to fraud—in the case of a genuinely aggrieved plaintiff barred from enforcing an oral contract—the statute may actually shield fraud. Note, *The Statute of Frauds as a Bar to an Action in Tort for Fraud*, 53 Fordham L.Rev. 1231, 1232–33 (1985).

■ In fact, New York courts perhaps also believing that strict application of the statute causes more fraud than it prevents, have tended to construe it warily. The one-year provision has been held not to preclude an oral contract unless there is "not ... the slightest possibility that it can be fully performed within one year." 2 *Corbin on Contracts* § 444 at 535; *Warner v. Texas and Pacific Railway*, 164 U.S. 418, 434, 17 S.Ct. 147, 153, 41 L.Ed. 495 (1896) ("The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year."); *Boening*, 63 N.Y.2d at 455, 483 N.Y.S.2d 164, 472 N.E.2d 992. ("this court has continued to analyze oral agreements to determine if, according to the parties' terms, there might be any possible means of performance within one year").

It was long ago established that

[i]t is not the meaning of the statute that the contract must be performed within a year. ... [I]f the obligation of the contract is not, by its very terms, or necessary construction, to endure for a longer period than one year, it is a valid agreement, although it may be capable of an indefinite continuance.

*Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.*, 19 N.Y. 305, 307 (1859). Therefore, a contract to continue for longer than a year, that is terminable at the will of the party against whom it is

being enforced, is not barred by the statute of frauds because it is capable of being performed within one year. *See North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 176–77, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968). Similarly, it has been held that a contract which provides that either party may rightfully terminate within the year falls outside the statute. *Blake v. Voigt*, 134 N.Y. 69, 72–73, 31 N.E. 256 (1892); *see 2 Corbin on Contracts* § 449 at 564.

When does an oral contract not to be performed within a year fall within the strictures of the statute? A contract is not "to be performed within a year" if it is terminable within that time only upon the breach of one of the parties. *Boening*, 63 N.Y.2d at 456, 483 N.Y.S.2d 164, 472 N.E.2d 992. That rule derives from logic because "[p]erformance, if it means anything at all, is 'carrying out the contract by doing what it requires or permits' . . . and a breach is the unexcused failure to do so." *Id.* (*citing Blake v. Voigt*, 134 N.Y. at 72, 31 N.E. 256). The distinction is between an oral contract that provides for its own termination at any time on the one hand, and an oral contract that is terminable within a year only upon its breach on the other. The former may be proved by a plaintiff and the latter is barred by the statute.

■ Avis contends that its oral agreement with Ohanian is barred by the statute of frauds because it was not performable within a year. Avis claims that it could only fire plaintiff if he breached the contract, and breach of a contract is not performance. Defendant further states that an option in plaintiff alone to terminate the contract at will, if there was in fact such an option, also would not remove this agreement from the statute's coverage. *See North Shore Bottling*, 22 N.Y.2d at 177 n. 3, 292 N.Y.S.2d 86, 239 N.E.2d 189; *Belfert v. Peoples Planning Corp.*, 22 Misc.2d 753, 755–56, 199 N.Y.S.2d 839 (1959), *aff'd mem.*, 11 A.D.2d 760, 202 N.Y.S.2d 101 (1st Dep't 1960), *aff'd mem.*, 11 N.Y.2d 755, 226 N.Y.S.2d 693, 181 N.E.2d 630 (1962).

What defendant fails to recognize is that under New York law "just cause" for termination may exist for reasons other than an employee's breach. Thus, for example, in *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 460, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), the plaintiff was induced to leave his former position to take up employment with defendant McGraw-Hill, in part by an assurance from defendant's representative that "since his company's firm policy was not to terminate employees without 'just cause', employment by it would, among other things, bring him the advantage of job security." The company handbook describing its dismissal policies stated, " [t]he company will resort to dismissal for just and sufficient cause only.... However, if the welfare of the company indicates that dismissal is necessary, then that decision is arrived at and carried out forthrightly.' " *Id.* at 460–61, 457 N.Y.S.2d 193, 443 N.E.2d 441. The New York Court of Appeals held that the arguably oral contract in question "whether terminable at will or only for just cause, [was] not one which, 'by its terms', could not be performed within one year and, therefore, [was] not one which [was] barred." *Id.* at 463, 457 N.Y.S.2d 193, 443 N.E.2d 441.

Later, in *Boening*, 63 N.Y.2d at 456 n. *, 483 N.Y.S.2d 164, 472 N.E.2d 992, the court noted that "the reference in [*Weiner*] . . . to an agreement terminable 'only for just cause' falling outside the Statute of Frauds is not to be construed as including an agreement where 'just cause' can *only* be the other party's breach." (emphasis added). The *Boening* court recognized therefore that some contracts terminable for "just cause" do not require a breach in order to terminate. In *Boening*, the court determined that the supply contract in question required plaintiff to "conduct its subdistributorship satisfactorily, exerting its best efforts and acting in good faith." *Id.* at 458, 483 N.Y.S.2d 164, 472 N.E.2d 992. Defendant was only allowed to terminate the contract for failure to satisfy those requirements. Since the *only possible cause* for termination was plaintiff's

breach, the contract was barred by the statute of frauds.

In the instant case, just cause for dismissing Ohanian would plainly include any breach of the contract, such as drinking on the job or refusing to work, since the agreement contemplates plaintiff giving his best efforts. But, as noted, just cause can be broader than breach and here there may be just cause to dismiss without a breach. To illustrate, under the terms of the contract it would be possible that despite plaintiff's best efforts the results achieved might prove poor because of adverse market conditions. From defendant's standpoint that too would force Avis to make a change in its business strategy, perhaps reducing or closing an operation. That is, there would be just cause for plaintiff's dismissal. But if this is what occurred, it would not constitute a breach of the agreement. Best efforts were contemplated by the parties, results were not. Defendant was anxious to have plaintiff relocate because of his past success, but plaintiff made no guarantee to produce certain results. Thus, this oral contract could have been terminated for just cause within one year, without any breach by plaintiff, and is therefore not barred by the statute of frauds.

■ Defendant's further claim that a contract does not escape the statute if it is terminable at will only by plaintiff is negated by the fact that the contract provided that plaintiff could be terminated for reasons other than the plaintiff's breach. As just stated, defendant could fire the plaintiff on account of conduct that would not constitute breach of contract. Where either party under the contract may rightfully terminate within a year, the contract is outside the statute. *See North Shore Bottling*, 22 N.Y.2d at 176, 292 N.Y.S.2d 86, 239 N.E.2d 189 (*quoting with approval Blake v. Voigt*, 134 N.Y. 69, 31 N.E. 256) and 177 n. 3; *Nat Nal Services Stations, Inc. v. Wolf*, 304 N.Y. 332, 336–37, 107 N.E.2d 473 (1952).

## B. The Parol Evidence Rule

■ Defendant next urges that any claims based on the oral agreement between Ohanian and Avis are barred by the parol evidence rule. Avis says that the clear and unambiguous letter of April 21, 1981 was signed by plaintiff, and it contradicts plaintiff's assertion that he was promised lifetime employment and severance on termination. It is, of course, a fundamental principle of contract law "that, where parties have reduced their bargain, or any element of it, to writing, the parol evidence rule applies to prevent its variance by parol evidence." *Laskey v. Rubel Corp.*, 303 N.Y. 69, 71, 100 N.E.2d 140 (1951).

Avis's argument fails for a very basic reason: the jury found that the April 21st letter did not constitute a contract between it and Ohanian. The trial judge had correctly instructed the jury that if it found the letter to be a contract it could not find for plaintiff, and the jury found for plaintiff. Parol evidence is excluded only when used as an attempt to vary or modify the terms of an existing written contract. *See Kirtley v. Abrams*, 299 F.2d 341, 345 (2d Cir.1962) (the rule does not preclude a party "from attempting to show that there never was any agreement such as the writing purported to be"); *Whipple v. Brown Brothers Co.*, 225 N.Y. 237, 244, 121 N.E. 748 (1919) ("One cannot be made to stand on a contract he never intended to make."); 3 *Corbin on Contracts* § 577 at 385 (1960).

This case is quite unlike *Franzek v. Calspan Corp.*, 78 A.D.2d 134, 434 N.Y.S.2d 288 (Fourth Dep't. 1980), upon which defendant relies. In *Franzek* the plaintiff, about to embark on a hazardous "white water" raft ride in the Niagara River, was handed and signed a release form. He later claimed he had not read it. Such failure on his part was held not to raise an issue of fact to relieve plaintiff of its effect when the release was asserted against his claim of injury. *Id.* at 138, 434 N.Y.S.2d 288. But the contrary appears in the present case where there is strong evidence in the record to support the jury's finding

that the writing was not intended to be a contract: the letter was on a form; it was sent to Ohanian in response to his request for relocation expenses; and he testified that he did not believe he read the letter other than to check a box indicating the type of relocation reimbursement he wanted. Most significantly, no evidence was presented that suggests that either Ohanian or Sharp, the Avis Vice President who sent the form to plaintiff, intended it to define the terms of Ohanian's employment with Avis.

## C. The Sufficiency of Evidence Regarding Avis's Promise of Lifetime Employment

 Avis says that inasmuch as the evidence of an oral promise of lifetime employment was insufficient as a matter of law, that issue should not have gone to the jury. It relies on *Brown v. Safeway Stores, Inc.*, 190 F.Supp. 295 (E.D.N.Y. 1960), as support for this argument. Defendant can draw little solace from *Brown*. In that case the claimed assurances were made in several ways including meetings of a group of employees—the purpose of which was not to discuss length of employment—or during casual conversation. *Id.* at 299–300. The conversations were not conducted in an atmosphere, as here, of critical one-on-one negotiation regarding the terms of future employment. Further, in *Brown* the district court found as a matter of fact that the alleged promise of lifetime employment was never made. In contrast, in the instant case the evidence was ample to permit the jury to decide whether statements made to Ohanian by defendant were more than casual comments or mere pep talks delivered by management to a group of employees. All of the surrounding circumstances—fully related earlier—were sufficient for the jury in fact to find that there was a promise of lifetime employment to a "star" employee who, it was hoped, would revive a "dying" division of defendant corporation.

 Avis argues further that even if a promise of lifetime employment terminable only for just cause is found, evidence of that promise is not sufficiently definite and for that reason cannot be enforced. It is true "that, before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.... Thus, definiteness as to material matters is of the very essence in contract law." *Joseph Martin, Jr., Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981) (citations omitted); *see also Brookhaven Housing Coalition v. Solomon*, 583 F.2d 584, 593 (2d Cir.1978) ("[t]o consummate an enforceable agreement, the parties must not only believe that they have made a contract, they must also have expressed their intent in a manner susceptible of judicial interpretation"). Yet, promises of lifetime employment have long been enforced if found to be supported by sufficient consideration. *See 9 Williston on Contracts* § 1017 at 132–35 & nn. 17–19 (3d ed. 1967); 3A *Corbin on Contracts* § 684 at 229 (1960). Defendant does not contend that Ohanian's consideration for the promise of lifetime employment—his relocation from San Francisco to New York—was inadequate.

## D. Defendant's Damage Arguments

Defendant finally urges that Ohanian's complaint alleges that any oral agreement between Avis and Ohanian contained a liquidated damage clause, and that therefore the damages awarded were excessive. Defendant refers to a portion of plaintiff's complaint which states:

in any event, if plaintiff's employment with Avis should be terminated for any reason, he would be entitled to the normal Avis Vice President's severance compensation on the basis of one month of benefits for each year of employment at the time of termination.

 We agree that if the severance package was intended to be liquidated damages, it would set a maximum on the recovery. Nonetheless, as plaintiff correctly points out, a liquidated damage clause must be the result of an express agreement

between the parties; courts will not read such a clause into a contract by implication. *See, e.g., Winkelman v. Winkelman,* 208 App.Div. 68, 70, 203 N.Y.S. 63 (1st Dep't 1924). It is anything but clear from the record that plaintiff intended the severance package to constitute his damages regardless of the reason he was terminated. Quite the contrary, the evidence suggests that the severance package was to be given plaintiff only if he "screwed up" in some manner that would constitute a breach of the contract and defeat his contract of lifetime employment.

■ Defendant finally contends that the trial court's instructions to the jury on how to compute damages were unreasonable. Allowing the jury to compute the amount plaintiff would have received until the natural end of his contract, according to Avis, gives the plaintiff a windfall. But the court also instructed the jury to subtract from this amount anything Ohanian had received and would receive from other employment and to reduce the amount arrived at to its present value. Contrary to defendant's view, this is a reasonable and correct method of determining future damages from lost wages. *See Chesapeake & Ohio Ry. v. Kelly,* 241 U.S. 485, 488, 36 S.Ct. 630, 631, 60 L.Ed. 1117 (1916); *Doca v. Marina Mercante Nicaraguense, S.A.,* 634 F.2d 30, 37 (2d Cir.1980), *cert. denied sub nom. Pittston Stevedoring Corp. v. Doca,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981).

### E. Plaintiff's Cross-Appeal

■ Plaintiff cross-appeals claiming that the jury was hopelessly confused in its computation of damages, and the result was a damage award so low as to constitute a miscarriage of justice. Ohanian bases the claim of confusion on his analysis of the notes that the jury made while determining damages. It is well-established that evidence from a jury or juror may not be used to impeach the jury's verdict. *McDonald v. Pless,* 238 U.S. 264, 267–69, 35 S.Ct. 783, 784–85, 59 L.Ed. 1300 (1915); *see United States v. Dioguardi,* 492 F.2d 70,

79 (2d Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974). Federal Rule of Evidence 606(b) provides:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ... or concerning his mental processes in connection therewith.... Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The subject jury notes fall within this rule and thus may not be used to attack the verdict. To use jurors' notes to impeach a verdict would, as the Supreme Court in *McDonald v. Pless* feared, "make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." 238 U.S. at 267–68, 35 S.Ct. at 784. *See also Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245, 1247 (3d Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971); *Carson v. Polley,* 689 F.2d 562, 581 (5th Cir.1982).

■ Other than the juror notes there is no basis for ordering a new trial on damages. Before ordering such a trial on account of inadequate damages an appeals court must find that the amount awarded is so low " 'that it would be a denial of justice to permit it to stand,' and hence, 'an abuse of discretion,' giving the 'benefit of every doubt to the judgment of the trial judge.' " *Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij,* 471 F.2d 705, 706–07 (2d Cir.1972) (per curiam), *cert. denied,* 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393 (1973) (*quoting Dagnello v. Long Island Rail Road Company,* 289 F.2d 797, 806 (2d Cir.1961)). The award here does not meet the criteria needed to obtain a new trial because of inadequacy.

### III CONCLUSION

Accordingly, the judgment appealed from is affirmed.

WYATT, District Judge, dissenting:

Believing that the oral lifetime employment contract as claimed by plaintiff is void under the New York Statute of Frauds, I am compelled to dissent. The majority decision appears not only to be in error, but also to be particularly unfair to defendant in light of the way the case was tried, the instructions of the trial judge to the jury, and the form of the special questions submitted to the jury.

Although there is no disagreement with much of the ably expressed majority opinion, the issue between us needs to be carefully explained.

## I

The "oral employment contract," as claimed by Ohanian in this Court (Brief for Ohanian, p. 7)—and at all times since the action began (A 6–18; "A" references are to pages of volume I of the Joint Appendix) —was a "lifetime employment contract" (Brief for Ohanian, p. 1), which he could terminate at any time, but which Avis could terminate only for "just cause." The evidence showed that the words "just cause" were never used. The evidence for plaintiff showed, if believed, that Ohanian was guaranteed his job for life "unless he totally screws up" (A 304), and that Ohanian was told he would not be fired "unless you screwed up badly" (A 304). "Just cause" was the legal term selected by counsel for Ohanian as a translation of the words actually used: "totally screws up" and "screwed up badly."

The answer of Avis denied the existence of the oral employment contract as averred by Ohanian, pleaded as an affirmative defense that his employment was governed by a written agreement dated April 21, 1981, under which both Avis and Ohanian "can terminate [his] employment at will," and pleaded as an affirmative defense the New York Statute of Frauds. (Jurisdiction had been based by plaintiff on diversity of citizenship.) The answer also contained a counterclaim alleging that Ohanian "fraudulently submitted expense reports" and

that Avis was entitled to recover from him a sum to be determined.

## II

Because of the way the case was tried and the form of the questions put to the jury, the decision of this appeal turns on the meaning of "just cause" for the contract *here in suit*.

As already noted, the words "just cause" were never used by the parties in the oral contract they made. The words actually used were that Avis would not terminate Ohanian's employment unless "he totally screws up" (A 281–82); Avis told Ohanian: "unless you screwed up badly there is no way you are going to get fired" (A 304). Counsel for Ohanian has avoided any statement of the right of Avis to terminate in the *actual words* of the contract; counsel for Ohanian prefers to use "just cause" in place of the words actually used. Counsel for Avis did not object to this, apparently in part because Avis has always claimed that the employment agreement was written, (*not* oral) and was terminable by either side at any time, and in part because Avis reasonably believed that "just cause" was intended as a synonym for "totally screws up" or "screwed up badly" and would be (and was) defined to the jury as such; this belief is reflected in the definition of "just cause" requested by Avis as a jury instruction and in the authorities cited to support it (Court Exhibit 2, A 23–24).

The question which should have been put to the jury, in my view, is: Did Ohanian prove that Avis agreed to employ him until he retired unless he was terminated because he "totally screws up" or "screwed up badly"?

Ohanian requested, however, that the question be put to the jury using the expression "just cause" instead of the contract words "totally screws up" or "screwed up badly," and without objection from Avis, Chief Judge Weinstein did so.

It is undisputed that under the New York Statute of Frauds, if an agreement may be terminated by one party *solely* for breach of the agreement by the other par-

ty, the agreement is barred by the Statute of Frauds. This is because *breach* of the agreement is not *performance.*

It had many years ago been determined that where either party might terminate *at will* within the one year, this rightful termination was performance and took the contract out of the Statute. *Blake v. Voight,* 134 N.Y. 69, 72, 31 N.E. 256 (1892). But it is otherwise when the contract may be terminated only for a *breach* by the other party. "Being terminable only by plaintiff's breach, the agreement alleged in the complaint was not one which by its terms could be *performed* within one year. As such, it came within the ambit of the Statute of Frauds and is void for being unwritten." *Boening v. Kirsch Beverages,* 63 N.Y.2d 449, 458, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984) (emphasis in original).

Avis has contended, and does so in this Court, that the Statute of Frauds makes the oral agreement void under this principle because (Brief, p. 13; emphasis in original):

> Both plaintiff and Mahmarian [general manager for Avis when the contract was made; dismissed about the same time as Ohanian] testified that plaintiff could remain at Avis until retirement unless *he* totally fouled up. Thus, the *only* "just cause" for terminating the agreement would "be the other party's [plaintiff's] breach." Plaintiff's alleged oral agreement falls squarely within the holding in *Boening* and its enforcement is barred by the Statute of Frauds.

Avis at trial argued that the oral contract to which Ohanian had testified at trial and Mahmarian had testified by deposition meant that Ohanian could be dismissed only for breach by him of the contract. After the plaintiff had rested at trial, Avis moved, among other motions, to dismiss on the Statute of Frauds. The discussion at this point ended with an argument by counsel for Avis as follows (Tr. 679–80; "Tr." references are to pages of the stenographic transcript; emphasis supplied):

> So what did Mr. Ohanian tell us? He said that *the only way he can get fired*

from Avis is if he totally ⸗fouls up. *There's no issue here* about whether or not Mr. Mahmarian told him or he understood that if Avis somehow needed to reorganize or *if it was in the best interest of Avis* for numerous reasons which Boening didn't specify what they were, but they said there could be other reasons other than the employees misconduct which could lead to termination, but *those aren't present here.* Mr. Ohanian's own words on Page 54 of the transcript was that, *I will stay at Avis unless I totally foul up.*

> So that the *only possible reason for the contract to end before a year is* on the grounds of defeasance *on the grounds of wrongful conduct by Mr. Ohanian,* some type of just cause.

> Now, it is *not* a contract which is provable because it's barred by the statute of frauds. And we again renew our motion to dismiss the lifetime claim on the grounds of the statute of frauds. That's the second part of our motion.

THE COURT: Decision reserved.

After both sides had rested, the motions for Avis were renewed and decision again reserved by the district court (Tr. 799). So far as can be found from the record, there was never any decision on the motions, but from the fact that judgment was entered on the jury verdict, it must be assumed that *sub silentio* and by implication they were denied; the denial, as I see it, was erroneous. In any event, there is no indication in the record that counsel for Ohanian ever argued that Ohanian could be terminated "if adverse market conditions.... would force Avis to make a change in its business strategy" or "for reasons other than the plaintiff's breach," as the majority now holds. To the contrary, Ohanian has always insisted that he was induced to leave California only by an oral contract giving him lifetime job security unless *he* "totally screws up".

Ohanian therefore has never claimed that Avis had any right to fire him except for a breach by him of the oral contract. Counsel for Ohanian has urged an entirely *dif-*

*ferent* argument to defeat application of the Statute of Frauds, (Brief, pp. 16–17):

> Here, clearly, is a description of Ohanian's option to discontinue the contract if he were dissatisfied with how it was working out—an option which *Boening*, some two years later, was to say took the agreement out of the Statute of Frauds (if ever it was there).

Although neither party ever made the claim in this Court or in the trial court, the majority now holds (opinion, p. 6717) that under the oral contract here in suit "there may be just cause to dismiss without a breach" by Ohanian. For this reason, the majority rejects the application of the Statute of Frauds and affirms the judgment against Avis. There being no evidence that the oral employment contract gave Avis any right to dismiss Ohanian unless he "screwed up badly," unless "he totally screws up," the Statute of Frauds in my view makes the oral contract void; the majority seems clearly wrong.

### III

The case for Avis as presented to the jury in summation was that "Ohanian was a dishonest employee who broke company policy and neglected his responsibilities" (Tr. 823). This was the beginning of the summation for Avis. The argument was also made for Avis that a written contract, signed by both parties, allowed either party to terminate at will and governed their relationship. If the jury were to find that no such written contract was intended, then the oral employment contract would become the issue. Counsel for Avis referred in summation to evidence that Ohanian was told that he would not be fired "unless you totally foul up" (Tr. 830), "unless he screwed up badly" (Tr. 835), "if he didn't do the job, if he screwed up, he would go out" (Tr. 836), "he has a right to stay at Avis the rest of his life unless he totally fouls up" (Tr. 846), that Ohanian was terminated for "malfeasnace, dishonors" (Tr. 847), that Ohanian was stealing from Avis (Tr. 852), that Ohanian was "a person who was dishonest," "a person who

ignored the duties of his office" (Tr. 852), that he made "a bid which is against company policy" and "refused to abide by the rules" (Tr. 854), that he admitted taking his girlfriend to Boston and charged all expenses to Avis (Tr. 857), and that he admitted "a thousand dollars worth of false charges" (Tr. 858). Counsel for Avis ended the summation by stating (Tr. 863) that "plaintiff has told you that he would not be fired by Avis unless he totally fouled up. We say that he had no such agreement with Avis, but even if he did, the evidence that you have heard establishes conclusively that Mr. Ohanian in July of 1982 really fouled up."

The case for Ohanian as presented to the jury in summation emphasized that Ohanian was primarily concerned about job security, that he must have his job for life unless there was fault on his part. The proposal for Avis through Mahmarian, to which Ohanian agreed, is quoted by his counsel in summation to the jury from the deposition of Mahmarian, as follows:

> I would guarantee this man his job. There is no way, as long as he has done a good job, *unless he totally screws up* somehow, and even then he can't get hurt, because I will give him the month per year severance. . . . (A 281–82; emphasis supplied).

Counsel for Ohanian also quoted Mahmarian to this Court (Brief, p. 8):

> Q. And did you explicitly tell Mr. Ohanian that he would not be fired unless it was for cause?
>
> A. Unless he screwed up, I didn't use the word—I remember using screwed. *Unless you screwed up badly, there is no way you are going to get fired. . . .* (A 304; emphasis supplied).

Counsel for Ohanian concludes his argument that Ohanian was asking for security (Brief, p. 9):

> Ohanian's *concern for security* had *thus* been satisfied. Mahmarian's personal policy of not firing anyone without just cause was made explicit to Ohanian on behalf of Avis.

The further argument for Ohanian to the jury in summation was that he was a "hard worker" (Tr. 864), a "star salesman" (Tr. 865), that "he was responsible for annual revenues for Avis of approximately $100,-000,000 a year" (Tr. 865), that he had "exceptional mastery of all phases of work" (Tr. 867), that his firing "was not a firing for cause" but "was a new management team taking over" (Tr. 867), that Avis thought "he was the best man we had" (Tr. 868), that Avis had a hard time to persuade Ohanian to leave California because he wanted job security and was "doing a good job and he would rather stay there" (Tr. 870), that Avis told him "he need not be concerned that he would never get hurt ... unless he screwed up totally, he was not going to get burned" (Tr. 871), that Avis told him (Tr. 876): "If he did the job, he had a place in that company. If he didn't do the job, if he screwed up, he would go out and at worst get the severance.", that "expense report irregularities" were "a sham," and "[t]his was a pretext and a sham" (Tr. 899–900), that when Ohanian was "up in Boston he took his brother out once with Nancy Edwards and then took Nancy Edwards on one occasion. I am telling you that ... was a commonly accepted practice by people at Avis ..." (Tr. 908), that Avis "tried to make Ohanian appear to be a thief in front of you" (Tr. 909), and that Avis "came in here with a lot of reasons which were not the reasons for sacking him" (Tr. 915). It was emphasized to the jury that the oral promise to Ohanian was the job security he sought—that he could not be dismissed unless he "totally screws up".

Counsel for Ohanian told the jury (Tr. 886):

And what did it cost Avis? Think about this. Think of the logic of it. You have got a man that is an absolute star. If things go as you are fully sure they're going to go, he is not going to foul up, he is always going to be a star, he is your top salesman, the best you have ever had.

\* \* \* \* \* \*

Wasn't that a sensible thing to offer Ohanian? I give you [my] word. You say you are going to be out there [California] and you are going to retire from the company because you are a star and you like it out here, [New York], you are going to retire from the company unless you foul up. Right. That was the promise. The promise he couldn't refuse. The promise he should have refused.

The record is clear that the case on the oral contract was tried to the jury on the premise by both sides that Avis could dismiss Ohanian only if he "totally screws up," meaning "did not do the job," violating his employment agreement. Counsel for Avis argued that Ohanian "was a dishonest employee who broke company policy and neglected his responsibilities" (Tr. 823). Counsel for Ohanian argued that the firing was not "for cause," and not because "somebody did something wrong," but because "this was a new management team taking over" (Tr. 867).

The issue as presented for the parties to the jury was completely inconsistent with the holding of the majority that under the oral contract "there may be just cause to dismiss without a breach [by Ohanian]."

## IV

The parties in their requests to charge—and at all other times—used "just cause" to express the right of Avis to dismiss Ohanian contained in the words of the oral contract: "totally screws up" or "screwed up badly."

Plaintiff did not ask for any instruction on the meaning of "just cause."

Counsel for Avis asked for an instruction on "just cause" as follows (Court Ex.2, A 23):

Defendant bears the burden of proof of establishing that plaintiff was discharged for just cause. In deciding whether plaintiff was discharged for just cause, however, you may not consider whether defendant had other reasons for firing him. Rather, if you find that

plaintiff breached his duty as an employee to defendant or failed to comply with plaintiff's reasonable instructions, you must return a verdict for defendant. If an employee has an agreement whereunder he could only be terminated for "just cause," then misconduct, neglect of duties, insubordination, dishonesty, padding expense accounts, and other such disloyal acts supplies that "just cause" and entitles the employer to terminate the employee.

The trial judge gave this request in substantial part (making some additions and subtractions) as follows (A 63):

Defendant bears the burden of proof of establishing that plaintiff was discharged for just cause. If you find that plaintiff breached his duty as an employee to defendant or failed to comply with defendant's reasonable instructions and that this was the reason he was discharged or that there was an otherwise valid reason for discharge, you must return a verdict for defendant. If an employee has an agreement providing that he could only be terminated for "just cause," then substantial misconduct, neglect of duties, insubordination, dishonesty, falsifying expense accounts, and other such disloyal acts supply that "just cause" and entitle the employer to terminate the employee. But if he was really fired for another invalid reason and these were merely excuses or pretexts, they would not constitute just cause.

This instruction, as I read it, clearly and correctly equates "just cause" for the oral contract in suit with breach of the contract by Ohanian. Indeed, the text from which the trial judge read his charge to the jury, at the end of the section "breach of contract" which contains the instruction on "just cause" quoted above, lists the authorities in support of the charge as given (A 53); they are the same authorities cited by Avis in support of its request on "just cause" (A 23), except for the addition of the New York Pattern Jury Instructions—Civil 4:21 Comment p. 225 (Supp. Nov. 1984).

In New York, a breach by an employee of the employment contract is ground for dismissal, whether or not there is a termination provision for "just cause." *Grozek v. Ragu Foods, Inc.*, 63 A.D.2d 858, 406 N.Y.S.2d 213, 214 (1978) ("If, however, the employment is for a definite term, the employer, in order to justify a discharge, must be able to show a breach by the employee of some express or implied provision of the contract.") The New York cases and other authorities cited by Avis, as shown above, and accepted by the trial judge, all dealt with breach of contract by an employee and not with the meaning of "just cause."

a.

In the instructions, "breached his duty as an employee" states a breach of contract by an employee which would justify dismissal. *Rudman v. Cowles Communications, Inc.*, 35 A.D.2d 213, 216, 315 N.Y. S.2d 409 (1970) ("then the disobedience is a breach of duty and like other breaches, entitles the employer to rescind the employment contract"), *modified on other grounds*, 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972).

b.

In the charge, "failed to comply with reasonable instructions" is a paraphrase of "disobedience of reasonable orders" quoted by Williston as a "well stated" violation of an employment contract justifying its termination by the employer. 9 *Williston on Contracts* § 1012B, at 30 (3d ed. 1967); *accord Jerome v. Queen City Cycle Co.*, 163 N.Y. 351, 356, 57 N.E. 485 (1900) (disobedience of reasonable orders "justifies rescission of the contract by the master and the discharge of the servant").

c.

In the Avis requested definition, one of the examples of "just cause" was "misconduct" of Ohanian. In the charge as given, "substantial misconduct" was the expression. This was because counsel for Ohanian wanted the jury told that it should balance prior years of good conduct against the misconduct now claimed by Avis. (T. 804; "T" references are to pages of Volume II of the joint appendix.) The trial

judge declined to do this, but, without objection for Ohanian, added the word "substantial" before "misconduct" in order to meet the point (T. 804). Either "misconduct" or "substantial misconduct" clearly states a breach of contract by an employee. *LaDuke v. International Paper Co.*, 258 A.D. 375, 17 N.Y.S.2d 608, 610 (1940) (employer may discharge employee "for misconduct or if the work is not done as directed").

#### d.

In the instructions, "neglect of duties" states a violation by an employee of an employment contract. *Farquhar v. American Code Co., Inc.*, 201 App.Div. 408, 459, 194 N.Y.S. 492 (1922) ("[I]f the plaintiff failed to perform his duties or to obey reasonable orders, the defendant was at liberty to discharge him.") (dictum), *aff'd*, 234 N.Y. 650, 138 N.E. 483 (1923).

#### e.

In the instructions, "insubordination" is another example of conduct which would be a violation of an employment contract. Williston states: "Disobedience which is accompanied with an element of insubordination" ... will always justify immediate discharge. 9 *Williston on Contracts* § 1013B, at 49; *accord Speiden v. Innis, Speiden & Co., Inc.*, 216 A.D. 408, 215 N.Y.S. 515, 515–16 (1926) (discharge of employee justified by his "insubordinate letters" and refusal and neglect to obey orders).

#### f.

In the instructions, "dishonesty" describes conduct which would be a breach of an employment contract and ground for discharge. *Hadden v. Consolidated Edison Co.*, 45 N.Y.2d 466, 410 N.Y.S.2d 274, 276, 382 N.E.2d 1136, 1138 (1978) (employee's conceded acceptance of bribes and gifts from those doing business with employer "constituted such grave misconduct and dishonesty as to justify the servant's discharge").

#### g.

In the Avis requested definition, one of the examples of "just cause" was "padding of expense accounts." In the charge as given, "falsifying of expense accounts" was the expression. This was by agreement of both sides, approved by the trial judge (T. 803–04). "Padding of expense accounts" or "falsifying of expense accounts" (which seem equally dishonest) would be a breach of the employment contract. 3A *Corbin on Contracts* § 680 (1960) states: "Fraud or dishonesty by an employee in relation to his employer is sufficient ground for his discharge. Obvious cases include ... padding expense accounts."

#### h.

In the instructions, "other such disloyal acts" is a description of acts of an employee which would be breaches of the employment contract because "such" refers to "substantial misconduct" and the other enumerated violations, all of which are breaches of the employment contract. In *Sunland v. Korfund Co.*, 260 A.D. 80, 20 N.Y.S.2d 819, 821 (1940) "disloyalty" is stated to be a violation of the employment contract.

#### i.

The trial judge made some additions and subtractions to the definition of "just cause" requested by Avis. As will be seen, these were certainly *not* for the purpose of enlarging the definition to mean that "just cause can be broader than breach and here there may be just cause to dismiss without a breach [by Ohanian]," as the majority now holds.

The additions made by the trial judge were caused by a sentence in the Avis requested instruction (Court Exhibit 2, A 23): "In deciding whether plaintiff was discharged for just cause, however, you may not consider whether defendant had other reasons for firing him." Ohanian asked for the following contrary instruction on this point (Requests to charge p. 6): "In deciding whether plaintiff was discharged for just cause, however, you may not consider whether defendant had other reasons for firing him." Ohanian asked for the following contrary instruction on this point (Requests to Charge p. 6): "In deciding

whether plaintiff was discharged for just cause, however, you may not consider whether defendant had other reasons for firing him." Ohanian asked for the following contrary instruction on this point (Requests to Charge, p, 6): "In deciding whether plaintiff was discharged for just cause, however, you need not, but may, consider whether defendant had other reasons for firing him."

Declining to give either of the requested charges on "other reasons" for a discharge, the trial judge ruled that the real reason in fact for his discharge could be considered by the jury; if the real reason for the discharge was "just cause" as defined in the charge, then there should be a verdict for defendant, but if the real reason for the discharge was not "just cause" as defined in the charge, then Avis would be liable for a wrongful discharge. To meet the first alternative, the trial judge added to the Avis request, the words "or that there was an otherwise valid reason for discharge." If the other and real reason were a "valid reason" (that is, plaintiff had been at fault in the performance of his job in some way other than, but equally serious as, a breach of duty as an employee or a failure to comply with reasonable instructions of Avis) then the real reason was a breach on his part; there was "just cause", and the jury "must return a verdict for defendant".

To meet the second alternative, the trial judge added the last sentence to his definition of "just cause": "But if he was really being fired for another invalid reason and these were merely excuses or pretexts, they would not constitute just cause." If the other reason were an "invalid reason" (that is, was *not* "substantial misconduct, neglect of duties, insubordination, dishonesty, falsifying expense accounts, and other such disloyal acts") then the real reason was *not* a breach on his part, the real reason was not "just cause", the reasons alleged for discharge were "merely excuses or pretexts", and Avis would be liable for an unlawful discharge.

There was nothing in the explanation by the trial judge to the jury of "just cause" which would suggest that Avis could justify its discharge of Ohanian by proof of anything short of a material breach by him of the oral employment contract. There is certainly no hint to the jury that "there may be just cause to dismiss [Ohanian] without a breach [by him]," the holding on which the majority decision is based.

### V

The trial judge submitted the case to the jury for answers to written questions (Fed. R.Civ.P. 49(a)). The first two questions, the only ones now relevant, were submitted substantially as proposed for Ohanian and were these:

"1. Did Ohanian prove that Avis agreed to employ him until he retired unless he was terminated for just cause?"

The jury answered "Yes" to this question.

"2. Did Avis prove that Ohanian was terminated for just cause?"

The jury answered "No" to this question.

In the light of these answers and the charge to the jury, judgment against Avis followed for the amount of damages found by the jury in other answers.

The issue on this appeal is whether the agreement as found by the jury—an oral agreement—is barred by the New York Statute of Frauds (N.Y.Gen.Oblig.Law § 5–701(a)(1) (West.Supp. (1984)); the cited section provides in relevant part that every agreement which is not by its terms to be performed within one year from its making is void unless in writing and subscribed by the party to be charged therewith.

As has been pointed out, the decisive question on this issue is: What is the meaning of "just cause" for the oral contract *here in suit?*

### VI

The majority decision rejects the application of the New York Statute of Frauds because the majority holds that under the oral contract in suit "there may be just

cause to dismiss without a breach [by Ohanian]," and that Avis could fire Ohanian if "adverse market conditions ... would force Avis to make a change in its business strategy ..." (op. p. 6717) and also "could fire the plaintiff on account of conduct that would not constitute breach of contract" (op. pp. 6717–18). From what words in the oral contract these provisions can be found we are never told; in a careful reading of the testimony, none have been found.

The only explanation for the result reached in the majority opinion seems to be that "under New York law 'just cause' for termination *may* exist for reasons other than an employee's breach" (op. p. 6716; emphasis supplied) and "*some* contracts terminable for 'just cause' do not require a breach in order to terminate" (op. p. 6716; emphasis supplied). The only precedent and example given for the holding is *Weiner v. McGraw Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982).

There can be no disagreement with the statement for the majority that "just cause" for an employment contract "may" include grounds for termination "other than an employee's breach"; of course, it depends on the definition of "just cause" in the contract and on all the circumstances under which the words of the contract were used. Similarly "some" contracts do not require a breach to be terminable for "just cause"; it depends on how "just cause" is defined in the contract and on all the circumstances under which the words of the contract were used. That there "may" be "some" such cases, however, is no guidance for the particular oral contract here in suit, where the words "just cause" were never defined because they were never used.

In the oral contract in suit, Avis had a right to terminate if Ohanian "totally screws up" or "screwed up badly." There is no evidence that these words referred to anything other than a breach by Ohanian of the duties and obligations of an employee, a breach of contract. There is no evidence that the words included a right in Avis to terminate whenever Avis was forced "to make a change in its business strategy" or for reasons other than fault on the part of Ohanian.

The majority opinion recognizes (op. p. 6708) that the promise made by Avis to meet "Ohanian's concerns about security" was: Avis would not fire him unless he "screwed up badly." It then holds, however, that, despite these words, Ohanian could be fired even though he had not done anything in violation of the employment contract. To me, it is inconceivable that Ohanian—demanding *job security* to persuade him to leave California—would agree to leave California for an oral contract which could be terminated by Avis without any breach on his part. To give Avis a right to fire him even though he had not "screwed up badly" or "totally" would deprive Ohanian of the very security on which he was insisting.

It would serve no useful purpose to debate the thesis of the majority opinion that "the Statute of Frauds is an anachronism today" and that the "reasons that prompted its passage no longer exist" (op. pp. 6713–14). The New York legislature has not seen fit to repeal the Statute of Frauds and the latest decision of the state's highest court, so far as research reveals, while recognizing a "narrow interpretation" of the Statute of Frauds which holds some contracts performable within one year to be "saved" from the Statute, states: "... clearly there are others which simply are impossible of completion within that time by their own terms and are therefore void if unwritten." *Boening v. Kirsch Beverages*, 63 N.Y.2d at 456, 483 N.Y.S.2d 164, 472 N.E.2d 992. The contract then before the Court in late 1984 was found terminable "only by plaintiff's breach" and "void for being unwritten." *Id.* at 458, 483 N.Y.S.2d 164, 472 N.E.2d 992.

The Statute of Frauds does not seem to be an "anachronism" for such cases as that at bar. The oral lifetime employment contract was claimed by Ohanian to have been made in a telephone conversation between him in California and Mahmarian for Avis in New York. The conversation was not

recorded; no memoranda were made. The only testimony was, and could only be, that of Ohanian and Mahmarian. Not only was Ohanian a witness hostile to Avis, but, Mahmarian, whose testimony was given by deposition on November 9, 1983 (A 245), had himself been dismissed by Avis on August 4, 1982 (A 246), a few days after Ohanian was dismissed, and was presumably hostile to Avis. Thus, Avis was at the mercy of Ohanian and Mahmarian in the sense that no person and no writing was available to confirm or contradict them; they alone had made the claimed oral contract and there was no writing.

## VII

The one "example" which the majority cites for its holding is *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). There are such enormous differences in significant facts as to make *Weiner* irrelevant to the case at bar; it affords no support for the holding of the majority.

In the *Weiner* case, the employment contract was *written* as well as oral. A written application form signed by Weiner specified that his employment would be subject to the provisions of the *McGraw-Hill* "handbook on personal policies and procedures." *Id.* at 460, 457 N.Y.S.2d 193, 443 N.E.2d 441. The written provision pertaining to termination in the Handbook was:

> The company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed. However, if the welfare of the company indicates that dismissal is necessary, then that decision is arrived at and is carried out forthrightly.

*Id.* at 460–61, 457 N.Y.S.2d 193, 443 N.E.2d 441. Thus it will be seen that in *Weiner* there was a writing, the writing used the words "just and sufficient cause," all practical steps to rehabilitate or salvage the employee were required, and if these failed and "if the welfare of the company indicates that dismissal [is] necessary," then

the company had a right to terminate. The New York Court of Appeals in its *Weiner* opinion made it clear that the "operative facts deserve emphasis." *Id.* at 460, 457 N.Y.S.2d 193, 443 N.E.2d 441. The difference between the written termination provision in *Weiner* and the oral termination provision in the case at bar (if Ohanian "totally screws up") is crucial. The New York Court of Appeals itself later described the right to terminate in *Weiner* as one where McGraw-Hill could "determine for any just and sufficient reason that termination was necessary for the good of the business." 63 N.Y.2d 449, 458, 483 N.Y. S.2d 164, 472 N.E.2d 992 (1984).

Two other important differences between the case at bar and *Weiner* should be mentioned. In *Weiner,* no question as to the Statute of Frauds was raised by defendant, as the Court itself pointed out. 57 N.Y.2d at 463, 457 N.Y.S.2d 193, 443 N.E.2d 441. In *Weiner,* the case reached the New York Court of Appeals on only a pleading question as to the sufficiency of the complaint; there had been no trial.

## VIII

Because the majority has rejected the defense of the Statute of Frauds for a reason never suggested by either party, the majority does not specifically address the argument against the Statute of Frauds which in fact has been urged by Ohanian (Brief, pp. 12–18).

The *only* argument advanced by Ohanian against the Statute of Frauds (Brief, pp. 12–18) is that since *he,* the plaintiff, had an option to terminate at any time, the contract was not within the Statute of Frauds. After quoting from the record to show *his* option to terminate, counsel for Ohanian summarizes his argument as follows (Brief, pp. 16–17):

> Here, clearly, is a description of Ohanian's option to discontinue the contract if he were dissatisfied with how it was working out—an option which *Boening,* some two years later, was to say took the agreement out of the Statute of Frauds (if ever it was there).

It has for many years been the law of New York that if *both* parties have the right to terminate a contract at any time, the contract is not barred by the Statute of Frauds. *Blake v. Voight*, 134 N.Y. 69, 31 N.E. 256 (1892). This is because the contract can be "performed" within a year if either party has a right to terminate it at any time.

But if only the plaintiff, *not the party to be charged,* may rightfully terminate an oral agreement at any time, the contract is void in New York under the Statute of Frauds. *North Shore Bottling v. Schmidt & Sons*, 22 N.Y.2d 171, 177 n. 3, 292 N.Y. S.2d 86, 239 N.E.2d 189 (1968); *Harris v. Home Indemnity Co.*, 6 A.D.2d 861, 175 N.Y.S.2d 603 (1st Dep't 1958); *Belfert v. Peoples Planning Corp.*, 22 Misc.2d 753, 199 N.Y.S.2d 839 (1959), *aff'd*, 11 A.D.2d 760, 202 N.Y.S.2d 101 (1st Dep't 1960), *aff'd*, 11 N.Y.2d 760, 226 N.Y.S.2d 693, 181 N.E.2d 630 (1962); *Abady v. Interco*, 76 A.D.2d 466, 430 N.Y.S.2d 799 (1st Dep't 1980); *Special Event Entertainment v. Rockefeller Ctr.*, 458 F.Supp. 72 (S.D.N.Y. 1978; Duffy, J.). It may be inferred from its opinion that this principle would be accepted by the majority. The opinion states (pp. 6714–15; emphasis supplied):

> Therefore, a contract to continue for longer than a year, that is terminable *at the will of the party against whom it is being enforced,* is not barred by the statute of frauds because it is capable of being performed within one year.

It seems perfectly clear that the argument against the Statute of Frauds in fact made by Ohanian is without merit.

## IX

For the reasons given, I would hold that, under New York law, the oral lifetime employment contract claimed by Ohanian is void for being unwritten. I would reverse and remand with instructions to enter judgment for defendant.

Even if, as the majority holds, the claimed oral contract is not barred by the Statute of Frauds, to affirm the judgment below for $327,693 against Avis seems to me to be unjust and unfair.

The jury has answered two questions:
1. Did Ohanian prove that Avis agreed to employ him until he retired unless he was terminated for just cause?
2. Did Avis prove that Ohanian was terminated for just cause?

The same definition of "just cause" should, and must, govern the determination of both questions.

A majority of a panel of this Court has now determined a question of the New York Statute of Frauds. The oral employment contract gives Avis a right to terminate if Ohanian "totally screws up" or "screwed up badly," words which were translated into "just cause" in the questions put to the jury. The majority has held that "just cause can be broader than breach and here there may be just cause to dismiss without a breach [by Ohanian]" (op. p. 6717), that "there would be just cause for.... dismissal [of Ohanian]" if the results achieved by Ohanian "might prove poor because of adverse market conditions" and if this forced Avis "to make a change in its business strategy" (op. p. 6717), and that Avis could fire Ohanian "on account of conduct that would not constitute breach of contract"(op. p. 6718).

Because of the way the case was tried and the understanding of the parties as to the meaning of the oral contract, the jury was instructed in substance that "just cause"—as a translation of "totally screws up" and "screwed up badly"—meant breach of the contract by Ohanian by such breaches of duty as substantial misconduct, dishonesty, and falsifying expense accounts, etc. The jury answered the questions based on the trial court's instructions. They were never told that " 'just cause' for termination may exist for reasons other than an employee's breach" (op. p. 6716), that " 'just cause' can be broader than breach and here there may be just cause to dismiss without a breach" (op. p. 6717), that "under the terms of the contract it would be possible that despite [Ohanian's] best efforts the results achieved might

prove poor because of adverse market conditions" and that this "would force Avis to make a change in its business strategy, perhaps reducing or closing an operation" and that "there would be just cause ... for dismissal [of Ohanian]" (op. p. 6717), that "the contract provided that plaintiff could be terminated for reasons other than [Ohanian's] breach" (op. p. 6717), or that Avis "could fire [Ohanian] on account of conduct that would not constitute breach of contract" (op. pp. 6717–18).

Had the parties realized that the meaning of the contract they had made was as now held by this Court, they surely would have submitted further and different evidence and arguments to the jury. Had the jury been given the explanation of "just cause" for the oral contract in suit as now made by this Court, it surely would have taken additional and different material into consideration. Whether the result would have been different is speculative, but, particularly as to whether Avis had "just cause" to dismiss Ohanian, the result might very well have been different. The burden of proof on Avis to show "just cause" under the very broad meaning now given to the oral contract by the majority would have been very much lighter than under the instructions given to the jury at the trial. "Just cause" was explained to the jury in the context of the contract in suit, the words actually used in the contract, and the circumstances of the parties. The majority has, with deference, divorced "just cause" from the operative facts and has treated it as a legal constant, having a fixed and changeless meaning without regard to the facts.

Ohanian, of course, now has the best of all possible worlds. Under his claim of a limited right of dismissal in Avis and only for breach of contract by him ("totally screws up," "screwed up badly"), a heavy burden was placed on Avis at trial and Ohanian secured a substantial verdict. On appeal, he now wins on the Statute of Frauds issue, not on the arguments he made, but because the oral contract is differently interpreted: Avis could rightfully have dismissed Ohanian without any breach of contract by Ohanian but for unspecified "conduct that would not constitute breach of contract," or without any "conduct" or fault by Ohanian if "adverse market conditions ... force Avis to make a change in its business strategy...." (Op. p. 6717).

Avis, on the other hand, is placed by the majority decision in the position of a player in a sporting contest where the rules of the game are changed after the game is over.

A meaning of the oral contract in suit having been determined by the majority to be different from that heretofore acted upon, it is "inconsistent with substantial justice" (Fed.R.Civ.P. 61) to affirm a judgment based upon the rejected meaning. Fairness seems to require that at least the action be remanded for a new trial, with directions to instruct the jury consistent with the ·majority opinion of this Court.